ARNOLD *v.* MASONIC COUNTRY CLUB.

1. CONTRACTS—EMPLOYMENT—ANNUAL—CALENDAR YEAR.

In action for salary under contract of employment as superintendent of country club, contract *held,* an annual contract for the calendar year as against contention that year began April 1st, the anniversary of commencement of employment.

2. ACCORD AND SATISFACTION—EVIDENCE—DISCHARGE FROM EMPLOYMENT.

Evidence *held,* insufficient to establish accord and satisfaction between country club and its superintendent upon latter's discharge from employment.

3. ACTION — SPLITTING CAUSE OF ACTION — WRONGFUL DISCHARGE
FROM EMPLOYMENT.

Final judgment for plaintiff in action for salary due for two
months' period immediately following unjustified discharge
from annual contract of employment operated as bar to sub-
sequent action for balance of salary for year since plaintiff has
but one cause of action for entire amount of his damages due
to breach of contract of employment by wrongful discharge.

Appeal from Kent; Verdier (Leonard D.), J.
Submitted June 5, 1934. (Docket No. 3, Calendar
No. 37,476.) Decided September 18, 1934.

Assumpsit by Albert E. Arnold against Masonic
Country Club of Western Michigan, a Michigan cor-
poration, on an alleged contract of employment.
Judgment for plaintiff. Defendant appeals. Plain-
tiff cross-appeals. Reversed, without a new trial.

*Dilley & Dilley,* for plaintiff.

*Rodgers & Dunn,* for defendant.

BUSHNELL, J. The questions raised by the appeals
are:
1.   Did plaintiff have an annual contract of em-
ployment?
2.   Did the yearly period begin on January 1st or
April 1st?
3.   Do the facts show accord and satisfaction?
4.   Did plaintiff split his cause of action?
The employment of plaintiff to begin on April 1,
1922, was authorized by a resolution of defendant's
board of directors, which fixed the compensation as
$2,000 a year and the use of a house. Plaintiff ac-
cepted and continued in defendant's service for
about nine years during which time the compensa-

tion was paid each week. The corporate records show a resolution on February 10, 1926, reading:

"Motion was made by Parmelee to pay superintendent Arnold $50 per week or $2,600 per year from January 1, 1926, and that he be privileged to use the superintendent's house as heretofore."

Another dated February 23, 1927, recites:

"Brother Schneider moved that the contract with superintendent Arnold for the balance of the year 1927 be renewed, namely $50 a week or $2,600 a year,"

while the last formal resolution fixed the salary for 1929 as the same for the past year. Plaintiff's testimony shows he was present at the 1927 meeting and acquiesced in the terms of the various resolutions. No citation of authorities seems necessary in order to determine that there was an annual contract of employment for the calendar year.

June 11, 1931, defendant's president wrote plaintiff that because it was necessary to reduce operating expenses his services would be terminated "on or before 30 days from June 15, 1931," and on June 17th plaintiff received two checks, one for $53.70 marked salary for two weeks ending June 13th, and the other for $247.90 covering June 14th and 15th and the 30 days following. Plaintiff replied that he claimed the right to occupy the house and his full salary to April 1, 1932, but that he would hold the checks until the 20th and, if he heard nothing further, he would assume that his understanding of the matter as set forth in his letter was identical with that of the defendant. To this he received a reply on the 19th, which said that the time fixed was too short in which to investigate the records in order to determine the facts. July 23d, plaintiff wrote that

he was cashing the checks without waiving his claim and having heard nothing assumed such action was satisfactory. Further correspondence between the parties asserting and denying justification of the termination of the employment and evidencing attempts at settlement add little to the facts, none of which, however, constitute accord and satisfaction.

Plaintiff commenced suit in the justice's court on September 18, 1931, the bill of particulars reading:

"To salary due from July 15, 1931, to September 15, 1931, under contract of hire for the year ending April 1, 1932—two months at $2,800 per year—$466.66 (the time after September 15, 1931, is not included in this suit but is expressly reserved)."

Defendant pleaded the general issue and that no contract existed after June 15, 1931, no services had been subsequently rendered, payment, and justification of the discharge. Plaintiff's judgment was affirmed on appeal to the circuit.

This action for the breach of his contract was brought by plaintiff and damages were claimed for unpaid salary from September 15th to April 1st. Defendant moved to dismiss on the grounds that plaintiff's action was barred by the previous judgment as both suits arose out of the same breach of the same contract, which motion was denied and plaintiff had judgment for unpaid salary from September 15th to December 31st with certain deductions.

The opinion of the trial court quotes 1 R. C. L. p. 354 and the rule forbidding the splitting of a cause of action arising out of the breach of a contract of employment, and says:

"Michigan has followed this rule since the case of *Webb* v. *Depew,* 152 Mich. 698 (16 L. R. A. [N. S.]

813, 125 Am. St. Rep. 431), at least to the extent of holding that in an action for breach of contract of employment by wrongful discharge, plaintiff may recover in one action all his damages for an entire nonfulfillment of the contract. See, also, *Kyselka* v. *Northern Assurance Co. of Michigan,* 208 Mich. 47; *Gallino* v. *Boland,* 221 Mich. 502.

"I am unable, however, to find any Michigan case which goes to the extent of holding that a plaintiff in such a case must recover in one action all his damages for an entire nonfulfillment of contract or be barred from any further action upon the same contract where he has had recovery for a part of the loss of wages claimed; though I realize that there is ample authority for that proposition."

Plaintiff's contract had been breached at the time of the justice court suit. If he could obtain a judgment for two months' salary and later for the six and one-half months' period, he might, if he so desired, maintain some 30 odd separate actions for each successive week's wages. Assuming that the same defense of justifiable discharge were interposed to each action, one suit might result in a verdict for plaintiff and another for defendant and so on through the various actions. If successive leaves to appeal were granted in each case, there would be no end to the litigation of the same subject matter.

As stated by Mr. Justice CAMPBELL:

"The principle which prevents the splitting up of causes of action, and forbids double vexation for the same thing, is a rule of justice, and not to be classed among technicalities. It was intended to suppress serious grievances." *Dutton* v. *Shaw,* 35 Mich. 431.

"It is a well-settled rule that an entire claim or demand arising out of a single transaction, whether in the nature of a contract or tort, cannot be divided

into separate and distinct claims, and the same form of action brought for each, or two suits maintained, without defendant's consent." *Continental Ins. Co. v. H. M. Loud & Sons Lumber Co.,* 93 Mich. 139 (32 Am. St. Rep. 494).

"The plaintiff's cause of action accrued when he was wrongfully discharged. His suit is not for wages, but for damages for the breach of his contract by the defendant. For this breach he can have but one action." *Webb* v. *Depew, supra,* quoting from *Cutter* v. *Gillette,* 163 Mass. 95 (39 N. E. 1010).

Defendant did not consent or waive its rights and plaintiff's statement in his bill of particulars did not abrogate the rule.

The judgment is reversed but without a new trial. Costs to appellant.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.