Aureo Avellanet, Plaintiff and Appellee, *v.* Porto Rican Express Co., Defendant and Appellant.

No. 8923. Argued December 7, 1944.—Decided March 16, 1945.

662

*Hartzell, Kelly & Hartzell, Rafael O. Fernández,* and *A. Ramírez Silva,* for appellant. *Pascasio Fajardo Martínez* and *Rafael A. Saliva,* for appellee.

Mr. Justice Snyder delivered the opinion of the court.

In 1942 Aureo Avellanet filed suit against Porto Rican Express Co. for $2,602.36 as wages due under Act No. 49, Laws of Puerto Rico, 1935 (Spec. Sess. Laws, p. 538). The complaint covers services rendered from 1935 to 1938. It alleges that from 1935 to 1936 plaintiff received a regular monthly salary of $45; that from 1936 to October 24, 1938, he received a regular monthly salary of $44; that the said salaries must be considered as payment for an eight hour day; and that the plaintiff worked five extra hours a day, for which he was entitled under Act No. 49 to additional pay at double the rate of his regular salary.

The municipal court decided in favor of the plaintiff, and the defendant appealed to the district court. That court likewise decided in favor of the plaintiff, but modified the judgment to provide for payment at twice the regular rate for the ninth hour, and at the regular rate for the remaining four hours. The case is here on appeal by the defendant from the judgment for $1,274, costs, and $200 attorney's fees.

In the first assignment of error the defendant contends that this suit, filed in 1942 for overtime pay allegedly due under insular Act No. 49 for work done from 1935 to

---

[1] That Section provides that: "The following prescribe in one year:

"1.      *      *      *      *      *      *      *

"2. Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in Section 1802, from the time the aggrieved person had knowledge thereof."

1938, has prescribed under § 1868 of our Civil Code providing for a period of limitation of one year.[1] In support of this theory, the defendant first quotes from *Enciclopedia Jurídica Española* (*Apéndice* 1926) p. 448 that the equivalent one-year prescriptive period of the Spanish Code applies to certain types of wage claims in the Industrial Courts of Spain. The defendant also cites *Divine* v. *Levy*, 45 F. Supp. 49 (Dist. Ct., La. 1942), which held that the Louisiana one-year statute of limitations found in Article 3536 of the La. Code for damages "resulting from offenses on quasi offenses" applied to a claim for liquidated damages under the Fair Labor Standards Act. This and similar cases are important for the administration of the Federal Act, as the period for prescription in such cases is determined under the provisions of state statutes. Some states have different statutory periods for enforcement of rights founded on torts, contracts, offenses, state or Federal statutes. Considerable controversy has grown up as to the classification under such state statutes of liquidated damages under the Fair Labor Standards Act. Some courts have come to the same restrictive conclusion as the Louisiana Federal District Court. Others have been more liberal,[2] including the District Court of the United States for Puerto Rico, which has held that § 1868 of our Code does not apply to a suit for liquidated damages under the Fair Labor Standards Act (*Pedro Pastrana et al.* v. *Porto Rico Coal Co.*, Civil No. 3806, decided August 25, 1944, *Manuel Martínez* v. *Bull Insular Line Inc.*, Civil No. 3803, February 19, 1944). But Spanish and Federal authorities, although informative, are not controlling here. The present suit is for overtime under the specific provisions of our own statute, Act No. 49, not under a Spanish statute or under the Fair Labor Standards Act. The nature of the right created by Act No. 49—which in turn will dictate the particular statute of limitation applicable thereto—is purely a

---

[2] Cf. *Keen* v. *Mid-Continent Petroleum*, *infra*, footnote 20.

question of local law. We therefore turn to Act No. 49 for an examination of that statute.

Act No. 49 provides for an eight-hour work day. It permits work during the ninth hour, but requires double pay therefor. We have held that work after the ninth hour, although prohibited on pain of criminal penalty, must be paid for at the ordinary rate of pay. But the rule has been clearly established that whether anything is due as ordinary pay after eight hours depends on the contract of employment; that is, one who under a private agreement between the parties worked thirteen hours a day for a stipulated daily, weekly or monthly salary has already been fully paid under Act No. 49—which is not a minimum wage Act—except for the additional pay for the ninth hour, which under those circumstances is paid for at an hourly rate calculated by dividing the amount received by the total number of hours worked to earn the same. *Cardona* v. *District Court*, 62 P. R.R. 59; *Muñoz* v. *District Court*, 63 P.R.R. 226.

It is therefore evident that a claim for work after the ninth hour at least is founded on contract. Consequently, the contention of the defendant that the present suit is one for damages or to enforce a penalty, and is therefore barred under § 1868 of our Civil Code, must be rejected as to that part of the claim of the plaintiff.

The plaintiff insists that in the *Cardona* case we characterized the double pay for the ninth hour as a penalty.[3] But a careful examination of the *Cardona* case discloses that we assimilated the double pay for the ninth hour to a penalty only for the limited purpose of satisfying the requirement that liabilities in the nature of penalties must be specifically imposed by statute. On the other hand, we pointed out that (p. 73) "It is certainly not a penalty in the traditional sense of punishment for offense against the State," and we compared it with the liquidated damages under the Fair Labor

---

[3] We assume, without deciding, that § 1868 applies to a suit to enforce a penalty.

Standards Act which the Supreme Court of the United States in *Overnight Motor Co.* v. *Missel,* 316 U. S. 572, 583, has said ''are compensation, not a penalty or punishment by the Government.'' Insular Act No. 49 has no provision for liquidated damages in the event of failure to pay for the ninth hour at double the regular rate; it provides only for double pay for the ninth hour, and nothing more. If liquidated damages would not be a penalty, *a fortiori* statutory overtime pay should not be so characterized, at least for the purpose of invoking the period of prescription found in § 1868 of the Civil Code. Our reasoning herein is therefore consistent with that of some Federal Courts, including the District Court of the United States for Puerto Rico, in refusing to apply § 1868 and similar statutes of limitations to suits for liquidated damages under the Fair Labor Standards Act.

The defendant also relies on the three-year statute found in § 1867 of our Code.[4] Avellanet began to work for the defendant as a clerk in 1927. His testimony was that from 1927 until October 24, 1938, he was employed in connection with the receipt and dispatch of local freight exclusively. Thereafter, he testified, he worked on other freight, presumably moving in interstate commerce. In view of these facts, the defendant asserts that the ''nature of the services'' rendered by the plaintiff changed in October, 1938; that under the rule laid down in *Muñoz* v. *District Court, supra,* this operated to terminate the previous contract of employment; that as a consequence the three-year period of prescription provided in § 1867 for such cases began to run in October,

---

[4] That Section provides that ''the following obligations shall prescribe in three years:

''1.    *      *      *      *      *      *      *

''2.    *      *      *      *      *      *      *

''3. For the payment of mechanics, servants, and laborers the amounts due for their services, . . . . .

''4.    *      *      *      *      *      *      *

''The time for the prescription referred to in the three preceding paragraphs shall be counted from the time the respective services have ceased to be rendered.''

1938, as to all services rendered prior to that date; and that the present suit, filed in 1942, was therefore barred.

We are unable to agree with this contention. For this doctrine to apply, it seems to us that there must at least be a true change in the type of work performed by the employee. Here he continued to do exactly the same work as he had always done: the clerical work required to handle freight in a local office of an express company. He or his attorney apparently thought he had to relate his work to interstate freight to assure recovery under the Fair Labor Standards Act in suits which, as we shall see, he filed for work done subsequent to October, 1938. But assuming that his testimony in this respect was true, we are unable to see how the origin or destination of the freight he handled made his services as a clerk different. There is nothing in the record to show (a) either that the work of a clerk on interstate freight is different from the same functions performed for local freight, or (b) that the parties as between themselves —without reference to the new Federal Act—entered into a new contractual arrangement. We therefore cannot hold that the services of the plaintiff were of a different nature after 1938.[5] The lower court did not err in rejecting, the special defense of prescription.

## II

The appellant next invokes the defense of *res judicata*. In support thereof, it presented in evidence in the lower court certified copies of an order and a judgment of the District Court of the United States for Puerto Rico showing that Avellanet was one of a number of plaintiffs who joined in filing two suits in that court against the defendant for back wages allegedly due under the Fair Labor

---

[5] We need hardly add that the question of whether the difference in the type of freight the plaintiff handled had some effect on coverage or lack of coverage of his job pursuant to the Federal Act is not before us and we make no comment thereon.

Standards Act for work done from 1938 to the date of the complaints, and that Avellanet consented to an order which was entered in 1940 dismissing the first suit, "the same to act as *res judicata* for all legal purposes," after being paid $303.86 in settlement thereof; and that he was paid $300 in full satisfaction of a judgment entered by consent in 1942 in his favor against the defendant in the second suit.[6] The defendant therefore asserts that recovery in 1940 and 1942 for services from 1938 to 1941 bars a subsequent suit for the earlier services from 1935 to 1938 in the same job.

One of the most important facets of the law of *res judicata* is that a litigant can not split his cause of action. If a plaintiff has a claim, he must present all of it, not part of it, in the suit he files. When he fails to do so, he cannot be permitted thereafter to file a new suit for the remainder of the same claim or cause of action. We recently restated this rule in *People* v. *Lugo, ante,* p. 529, decided February 13, 1945, where we pointed out that a cause of action is merged in the judgment rendered thereon, and that such a judgment is conclusive—provided the same parties and the same cause of action are involved—as to all matters which might have been, but were not, actually litigated and determined.[7]

In commenting on § 62 The Restatement, Judgments, points out that "Where a party to a single indivisible contract has committed two or more breaches of contract, and the other party brings an action against him for one or more of the breaches, the judgment, whether for the plaintiff or for the defendant, precludes the plaintiff from maintaining thereafter an action for any breach of the contract committed by the defendant before the commencement of the action.

---

[6] The total paid to all the plaintiffs was $6,208.79 in the first suit and $4,900 in the second suit.

[7] To this effect, see also, *Heirs of Rivera* v. *Lugo,* 63 P.R.R. 13; *Laloma* v. *Fernández,* 61 P.R.R. 550; *Encarnación* v. *Maeso,* 48 P.R.R. 468; *Cromwell* v. *County of Sac,* 94 U.S. 351, 352; *Méndez* v. *Bowie,* 118 F. (2d) 435, 441 (C.C.A. 1st, 1941); Restatement, Judgments, §§ 47, 62.

*All the breaches of contract prior to the commencement of
the suit are treated as a single cause of action."* (Italics
ours.) [8]

No one disputes either the existence of this rule or its
application to breaches of contract of employment. It is
therefore admitted in effect that if there had been suit in
a Federal Court on a *contract* of employment in 1942, re-
covery in that suit for failure to pay the contract wages for
1938–41 would bar a subsequent suit in an insular court for
the contract wages for 1935–38. They would clearly be parts
of the same cause of action, and could not be split into two
suits.

But when we turn to the instant case we encounter a
baffling problem. Were the claims for 1938–41 under Fed-
eral law and for 1935–38 under insular law parts of the same
cause of action? The difficulty here is that the cause or
causes of action did not arise solely out of the contract of
the parties. Rather, they were created by Acts of the in-
sular Legislature and of the Congress. It is true that the
facts of employment must exist on which the statutes can
operate. But no rights arose out of the facts standing alone.
The rights were created by the impact of the two insular and
Federal statutes on the facts of employment. Recovery was
had by the plaintiff in 1940 and 1942 in suits filed, together
with other employees of the defendant, in the Federal Court
for back wages due under the Fair Labor Standards Act.
Not only did the right to the said wages emanate from the
Federal Act and not solely from the contract of employment,
but also the Federal Court had jurisdiction over the suits
only because of the specific provisions of that Act permitting

---

[8] *Moore* v. *Illinois Cent. R. Co.*, 136 F. (2d) 412 (C.C.A. 5, 1943); *Dern* v.
*Tanner*, 96 F. (2d) 401 (C.C.A. 9, 1938); *Turner* v. *Gladys Delle Oil Co.*, 36
F. (2d) 671 (C.C.A. 5, 1930); *Arnold* v. *Masonic Country Club*, 256 N.W. 472
(Mich., 1934). See *Baird* v. *United States*, 96 U.S. 430; 5 Williston on Con-
tracts, Revised ed., § 1292. Cf. *Baltimore S.S. Co.* v. *Phillips*, 274 U.S. 316,
319; *United States* v. *Moser*, 266 U.S. 236, 241; 64 A.L.R. 663; 127 A.L.R.
1081.

suits, irrespective of the amount involved, to be filed in the United States district courts, and permitting a number of employees to join in the same suit as plaintiffs (Title 29 U.S.C.A. § 216 (b)).[9] The rights of the plaintiff under insular Act No. 49 stem from a different legislative source, and are different in nature as to the only issue here, overtime pay.[10] Can it nevertheless be said that the right to overtime pay by virtue of insular Act No. 49 was part of the *same cause of action* for which judgment had already been granted in the Federal Court by virtue of Federal law for regular and overtime pay under the Fair Labor Standards Act, because the same operative facts of employment are involved under both the insular and the Federal statutes? If that question be answered in the affirmative, the contention that the plaintiff has violated the rule against splitting a cause of action becomes formidable indeed.

We plunge with trepidation into the maelstrom created by the courts in attempting to define a cause of action.[11] "Use of that term in a context of generality wears an ap-

[9] Title 28 U.S.C.A. § 41 (8) provides that the $3,000 requirement shall not apply to "suits and proceedings arising from a law of the United States regulating commerce." And a suit under the Fair Labor Standards Act is a suit arising from a law of the United States regulating commerce (*Robertson* v. *Argus Hosiery Mills*, 121 F. (2d) 285 (C.C.A. 6, 1941).

See Rahl, *The Class Action Device and Employee Suits Under the Fair Labor Standards Act*, 37 Ill. L. Rev. 119; Crockett, *Jurisdiction of Employee Suits under the Fair Labor Standards Act*, 39 Mich. L. Rev. 419.

[10] Act No. 49 provides for double pay after eight hours work a day for the ninth hour only. *Cardona* v. *District Court, supra.* The Fair Labor Standards Act provides for time and a half after forty hours a week (Title 29 U.S.C.A. § 207). It is obvious that under different factual situations overtime pay would accrue under one, but not under the other, statute. In addition, the Federal, but not the insular, statute provides for an equal amount in liquidated damages for failure to pay overtime pursuant thereto (Title 29 U.S.C.A. § 216).

[11] What constitutes the same cause of action for the purposes of *res judicata* has been a prolific source of controversy. Scott, *Collateral Estoppel by Judgment*, 56 Harv. L. Rev. 1, 22–26; Restatement, Judgments, Title D, *What Constitutes the Same Cause of Action*, p. 239. Cf. Annotations in 64 A.L.R. 663, 127 A.L.R. 1081, in the field of tort law. See *State Farm Mutual Automobile Insurance Co.* v. *Duel*, 324 U.S. 154, decided February 12, 1945.

pearance which proves illusory when exact application becomes necessary."[12] Indeed, the Supreme Court has warned us that "A 'cause of action' may mean one thing for one purpose and something different for another."[13] With that warning in mind, we turn to the precise question involved of action created by the Federal statute? The closest cases we have found on this question arise in the patent and trademark field.[14] If one has a properly registered trade-mark under the Federal Trade-Mark Act, the Federal courts are in the instant case, which is as follows: does the creation of a right by Federal statute on the basis of certain facts result in making all other non-Federal rights flowing from those same facts under state law a part of the same cause specifically granted jurisdiction of suits alleging infringement thereof. On the other hand, if it is not a properly registered trade-mark under the Federal statute, the only remedy is a suit for unfair competition at common law. But the "facts supporting a suit for infringement and one for unfair competition are substantially the same. They constitute and make plain the wrong complained of, the violation of the right to exclusive use." *Armstrong Co.* v. *Nu-Enamel Corp.*, 305 U. S. 315. The Supreme Court therefore concludes in the *Nu-Enamel Corp.* case that only one cause of action is

---

[12] Although this language was used in *Davies Warehouse Co.* v. *Bowles,* 321 U.S. 144, 147, on a different problem, it applies with equal force here.

[13] *United States* v. *Memphis Cotton Oil Co.,* 288 U.S. 62, 67–8; see also, *Gully* v. *First Nat. Bank,* 299 U.S. 109, 117.

[14] Counsel for the plaintiff cites no cases at all on the question of *res judicata.* Counsel for the defendant content themselves with citing *Laloma* v. *Fernández,* 61 P.R.R. 550. But that case merely stands for the obvious principio that the same parties can litigate the same cause of action only once. And the real question here is whether the 1935–38 claim is part of the same cause of action as the 1938–42 claim. We are aware that our decision here must necessarily be predicated on the answer to an abstruse question of Federal jurisdiction, an almost esoteric field in which we neither profess nor possess the expertise which can be achieved, or even approached, only by daily performance of the duties of a Federal judge, and not by our occasional service in that capacity (Title 48 U.S.C.A. § 863). Nevertheless, we know of no way to avoid facing the problem in this case.

involved in the Federal trade-mark right and the non-Federal unfair competition right. Consequently, the Court held that (p. 324) "Unless plainly unsubstantial, the allegation of registration under the act is sufficient to give jurisdiction of the merits." And a holding that the trade-mark was invalid did not thereby divest the court of jurisdiction over the unfair competition. On the contrary, (pp. 324–5) "Once properly obtained, jurisdiction of the one cause of action, the alleged infringement of the trade-mark, persists to deal with all grounds supporting it, including unfair competition with the marked article." [15]

The Court goes on to point out at p. 325 that *Hurn* v. *Oursler*, 289 U. S. 238, the leading case in this field, "held that where the causes of action are different, the determination that the federal cause fails calls for dismissal. But where there is only one cause of action we do not consider that the holding of the invalidity furnishes any basis for a distinction between this and the *Oursler* case. Registration of 'Nu-Enamel' furnished a substantial ground for federal jurisdiction. That jurisdiction should be continued to determine, on substantially the same facts, the issues of unfair competition."

The *Oursler* case states this principle of Federal jurisdiction as follows at pp. 245–6; "But the rule does not go so far as to permit a federal court to assume jurisdiction

---

[15] Cf. the related doctrine that "where federal jurisdiction exists because a federal question is involved, the court may adjudicate every question involved in the case, whether federal or not, even though it decides the federal question against the plaintiff or does not decide it at all. It is generally said that the federal question must be substantial." *Scope of Federal Jurisdiction Obtained Through Existence of a Federal Question*, 40 Harv. L. Rev. 298; *Water Service Co.* v. *Redding*, 304 U.S. 252; *Siler* v. *Louisville & Nashville R.R. Co.*, 213 U.S. 175; *Levering & Garrigues Co.* v. *Morrin*, 61 F. (2d) 115, 119, 120 (C.C.A. 2, 1932); *Municipality of Río Piedras* v. *Serra, Garabis & Co.*, 65 F. (2d) 691, 701 (C.C.A. 1, 1932).

For our purposes in Puerto Rico, it is also important to note that the contention has been rejected that all suits in all courts in Puerto Rico involve Federal questions because authority to maintain such suits stems, in final analysis, from an Act of Congress, the Organic Act. The Supreme Court said

of a separate and distinct non-federal cause of action because it is joined in the same complaint with a federal cause of action. The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the non-federal *ground;* in the latter it may not do so upon the non-federal *cause of action.* . . . The applicable rule is stated, and authorities cited, in *Baltimore S. S. Co.* v. *Phillips,* 274 U. S. 316. 'A cause of action does not consist of facts,' this court there said (p. 321), 'but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong . . . . "They do not constitute the cause of action, but they show its existence by making the wrong appear." '

"   *        *        *        *        *        *        *

"We do not mean by what has just been said to lay down

---

in *Puerto Rico* v. *Russell & Co.,* 288 U.S. 476, 483: ". . . For we think that even though petitioner derived its authority to maintain the suit from the Act of Congress, it did not arise under the laws of the United States within the meaning of the jurisdictional statutes.

"The suit was brought to recover assessments levied under the Act of the Puerto Rican legislature, but not to enforce a right created by a law of the United States. No question of interpretation or enforcement of the federal statute appears upon the face of the complaint. Federal jurisdiction may be invoked to vindicate a right or privilege claimed under a federal statute. It may not be invoked where the right asserted is non-federal, merely because the plaintiff's right to sue is derived from federal law, or because the property involved was obtained under federal statute. The federal nature of the right to be established is decisive—not the source of the authority to establish it. . ."

See also *Gully* v. *First National Bank,* 299 U.S. 109, 114–16.

a hard and fast test by which to determine in all situations what constitutes a cause of action. ''A ''cause of action'' may mean one thing for one purpose and something different for another.' *United States* v. *Memphis Oil Co.*, 228 U. S. 62; but for the purpose of determining the bounds between state and federal jurisdiction, the meaning should be kept within the limits indicated. Compare *B. & O. S. W. R. Co.* v. *Carroll*, 280 U. S. 491, 494–5, and cases cited.'' [16]

The question therefore would seem to be whether, in the language of the *Oursler* and *Nu-Enamel* cases, the respective Federal (1938–42) and non-Federal (1935–38) claims for back wages of the plaintiff herein are merely different grounds in support of the same cause of action, or whether they actually involve different rights warranting the label of separate causes of action. But interesting as that problem may be, we are not called on to decide it in this particular case. We assume, without deciding, that rights arising under insular Act No. 49 out of the same facts of employment subsequent to 1938 are part of the same cause of action on the rights stemming from the Fair Labor Standards Act for employment since the Federal Act went into effect in October, 1938.[17] But, drawing once more on an analogy supplied by a trade-mark case, *Stark Bros. Co.* v. *Stark,* 255 U. S. 50, we find that any non-Federal right under Act No. 49 for work prior to 1938 is not part of a cause of action arising under

---

[16] The problems raised by *Hurn* v. *Oursler* are extensively examined in *Jurisdiction in Federal Courts Over Non-Federal Claims When Joined with a Federal Question*, 52 Yale L. J. 922; 1 Moore, Federal Practice, 155–65, 1944 Suppl. pp. 266–70; Shulman and Jeagerman, *Some Jurisdictional Limitations on Federal Procedure*, 45 Yale L. J. 393; *Scope of Federal Jurisdiction Obtained Through Existence of A Federal Question*, 40 Harv. L. Rev. 298; 45 Yale L. J. 1287; 33 Col. L. Rev. 296.

[17] We therefore put to one side such questions as whether wage claims under Act No. 49 and the Fair Labor Standards Act are inextricably intertwined, whether the proof necessary to establish the non-Federal claim is substantially identical with that necessary to establish the Federal claim, or whether substantial additional evidence, not relevant to the Federal claim, is needed for the non-Federal claim. See the illuminating majority and dissenting opinions in *Zalkind* v. *Scheinman,* 139 F. (2d) 895 (C.C.A. 2, 1943).

the Fair Labor Standards Act of 1938 for work done after 1938, even though the same employment is involved.

In the *Stark* case, suit was brought in a Federal court both for infringement of a trade-mark and for the non-Federal right of unfair competition arising out of the same facts. The Supreme Court held that the Federal court had no jurisdiction to grant damages for the unfair competition which took place prior to registration of the trade-mark under the Federal statute. Mr. Justice Holmes, speaking for the Court, said at pp. 51–2:

"The infringement that is sued for is infringement of a registered trade-mark, not infringement of a trade-mark. That is the plain meaning of the above words and the necessary scope of this suit since that is the scope of the jurisdiction of the District Court. *A. Leschen & Sons Rope Co.* v. *Broderick & Bascom Rope Co.*, 201 U.S. 166, 172. It seems very plain that the plaintiff had a cause of action outside the statute, but that would have to be asserted elsewhere, as the suit was between citizens of the same State. The statute alone gave the right to come into this Court of the United States. Coming in to assert its statutory rights, we will assume in the plaintiff's favor that it could recover for unfair competition that was inseparable from the statutory wrong, but it could not reach back and recover for earlier injuries to rights derived from a different source." [18]

---

[18] The *Stark* case has not been overruled by the *Oursler* case. 1 Moore, *supra*, 1944, p. 267. *Zalkind* v. *Scheinman*, 139 F. (2d) 900, 901, footnote 14, (C.C.A. 2, 1943); *Slaymaker Lock Co.* v. *Reese*, 24 F. Supp. 69 (E.D. Pa., 1938). Indeed, the *Oursler* case itself discusses the *Stark* case, apparently with approval, at pp. 241–2 of 289 U.S. It is therefore not for us to say, as does the commentator in 52 Yale 922, *supra*, at p. 926 that "The best practice would seem to be to inquire whether the proof necessary to establish the various unfair acts is substantially identical and not to solve the jurisdictional question solely on the issue of whether the acts occurred before or after registration." The best statement of the competing considerations, including the argument of judicial economy in favor of one suit instead of two to dispose of two or more claims arising out of one factual situation, despite their different legislative sources, are found in the majority and dissenting opinions in *Zalkind* v. *Scheinman*, 139 F. (2d) 895 (C.C.A. 2, 1943), and *Musher Foundation* v. *Alba Trading Co.*, 127 F. (2d) 9 (C.C.A. 2, 1942). But this is a question of Federal jurisdiction; we must therefore follow the rule laid down by the Supreme Court of the United States in the *Stark* case.

The situation can therefore be summed up as follows: in the absence of diversity of citizenship, when a suit is filed in the Federal court as here asserting a right created by a Federal statute which also confers jurisdiction on the Federal courts to hear cases asserting that right, a non-Federal right not arising under a Federal statute can be joined in the said suit only if it is part of the same cause of action.[19] And a non-Federal right arising prior to the passage of the Federal statute under which the original suit is based is not, under the *Stark* case, part of the same cause of action involved in the Federal suit. Therefore, if the plaintiff herein had attempted to join in the Federal suits the claim for 1935–38 wages pursuant to insular Act No. 49, the Federal court would have been required to dismiss the same for want of jurisdiction.[20]

But once we are satisfied that (*a*) the non-Federal right here is a "different" cause of action, and that (*b*) the Federal court would have had no jurisdiction thereof within the Federal suit founded on the Federal right, the conclusion would seem inevitable that the rule against splitting a cause of action has not been violated in this case. That rule "is applicable only where the law has placed no impediment in the way of his obtaining, in the action he has brought, the full measure of relief to which he is entitled," *Taub* v. *Mc-*

---

[19] In other words, varying claims may be joined when they are but different phases of a single cause of action but not otherwise.

[20] We would scarcely have ventured this far in our reasoning if we did not feel fairly certain that the rights under the Fair Labor Standards Act, for the purposes of this particular case, flow primarily from the statute and not from a contract. We are aware that *Keen* v. *Mid-Continent Petroleum*, 58 F. Supp. 915 (Dist. Ct., N. Iowa, Jan. 11, 1945), 13 L.W. 3373, in order to avoid an Iowa statute of limitations of six months for claims arising pursuant to any Federal statute and to permit use of a longer prescriptive period for suits founded on contract, held that "liability under the Fair Labor Standards Act is basically and essentially contractual in nature." Compare *Loggins* v. *Steel Const. Co.*, 129 F. (2d) 118 (C.C.A. 5, 1942). But this only reinforces our thesis that the courts refuse to yield to the tyranny of a label, convenient in its context, but inappropriate in another factual situation. Cf. *Government of the Capital* v. *Executive Council*, 63 P.R.R. 417.

*Clelland-Cold Commission Co.*, 51 P. 168 (Colo.), quoted with approval in *Taylor* v. *Continental Supply Co.*, 16 F. (2d) 578, 581 (C.C.A. 8, 1926). "The rule as to splitting causes applies only to claims 'then capable of recovery' in the first action." *United States* v. *Pan-American Petroleum Co.*, 55 F. (2d) 753, 782 (C.C.A. 9, 1932), Cf. *U. S.* v. *Calif. & Oregon Land Co.*, 192 U. S. 355; *Baltimore S. S. Co.* v. *Phillips*, 274 U. S. 316. See 1 Moore, *supra,* § 204, p. 147, footnote 19.

We are aware of a contention that might be made in attempting to avoid the authorities we have just cited. It runs something like this: there were available to the plaintiff in 1942 two methods whereby he could have received full relief in one suit for all wage claims under both insular and Federal law arising from the facts of his employment from 1938 to 1942. The first method would have been to join all his claims under Federal and insular law, whether they be "different" causes of action or not, in one Federal suit grounded on diversity of citizenship.[21] The second method would have been for the plaintiff to sue for the 1938–42 claims under the Fair Labor Standards Act in an insular court and to join therein his claim under insular Act No. 49 for 1935–38 arising out of the same operative facts of employment.[22] The argument would be that there is applicable

[21] Since diversity of citizenship—plus the jurisdictional amount—and not the nature of the controversy determines jurisdiction under these circumstances, the claims need have no relation to each other (Shulman and Jaegerman, *supra,* p. 408; *Armstrong Co.* v. *Nu-Enamel Corp.*, 305 U.S. 315, 325, footnote 9). Also, even though the claims do not each involve separately more than $3,000, they may be aggregated to reach the jurisdictional amount (*B. & O. Southwestern R.R. Co.* v. *United States*, 220 U.S. 94, 106; *Kimel* v. *Mo. State Life Ins. Co.*, 71 F. (2d) 921, 924 (C.C.A. 10, 1934); *Yates* v. *Whyel Coke Co.*, 221 Fed. 603, 606 (C.C.A. 6, 1915); *Mass. Protective Ass'n.* v. *Kittles*, 2 F. (2d) 211 (C.C.A. 5, 1924.) And here, when all the Federal and non-Federal claims are added together, apparently they amount to more than $3,000. Since the defendant is a foreign corporation and the plaintiffs are all citizens and residents of Puerto Rico, the requisite diversity of citizenship exists.

[22] The theory here would be that the insular courts have concurrent jurisdiction over claims under the Fair Labor Standards Act (Title 29, U.S.C.A. § 216 (b)); and that Rule 18 (a) of our Rules of Civil Procedure —§ 104, Code

here the analogy that one cannot avoid the rule against splitting a cause of action by suing first in a court of limited jurisdiction as to amount and type of action, and thereafter bringing a suit for the remainder of the claim in a court of general jurisdiction. Restatement, Judgments, § 62 j., pp. 253–4. The theory is that a party thereby voluntarily curtails his cause of action.

But there are at least two differences between that situation and the instant case. Here we have a question of distribution of jurisdiction between courts of different sovereignties.[23] In addition, our case involves rights created by different legislative bodies, with specific provisions for enforcement of each through summary and other special procedures separately provided in each statute.

The very next subsection of the Restatement, § 62 k., p. 255, although not wholly in point here, give another analogous situation in which the rule found in § 62 j. is avoided. It points out that the "rule against splitting a cause of action which normally prevents obtaining two judgments where there was originally but one cause of action, does not necessarily prevent an injured person from seeking a remedy which under the circumstances can apply only to part of the subject matter . . . where a plaintiff brings an action in a State in which the courts have jurisdiction only with reference to one portion of his cause of action, he is not barred from maintaining an action in a proper court for the other

---

of Civil Procedure, of our previous law—permits joinder of the claim under Act No. 49 for 1935–38. We put to one side the troublesome questions of whether a municipal court would have unlimited jurisdiction over the Fair Labor Standards Act claim (*Wiewall & Co.* v. *Municipal Court,* 61 P.R.R. 443), and whether the summary procedure found in Act No. 10 of 1917 (vol. II, p. 216) would apply. (Cf. *Herb* v. *Pitcairn,* 324 U.S. 117, decided Feb. 5 1945; *Garrett* v. *Moore-McCormack Co.,* 317 U.S. 239.)

[23] While technically the authority of both the Federal and insular courts stems from the same sovereignty, Congress has been motivated by similar considerations in providing for the jurisdiction of the District Court of the United States for Puerto Rico. (Title 48 U.S.C.A. §§ 863, 864.)

portion." See also, *Tribby* v. *O'Neill*, 39 App. D. C. 467 1912).

Which is the closest analogy here—§ 62 *k.* or § 62 *j.*? The claim for 1935–38 wages herein arose prior to passage of the Fair Labor Standards Act. This requires, as we have seen, a holding that the claim for 1935–38 wages under Act No. 49, for purposes of jurisdiction of courts of different sovereignties, is a different cause of action than the claim for 1938–42 wages under the Fair Labor Standards Act. And all the authorities which could be invoked against the plaintiff, including § 62 *k.*, apply only to an attempt to split the same cause of action. That is enough to decide the point here against the defendant.[24]

There is another approach to this point, partly procedural in nature, which leads to the same result. The Supreme Court of the United States has called two rights—one, infringement of a trade-mark, which is Federal; the other, unfair competition, which is non-Federal—the "same cause of action" in order to justify the assumption of jurisdiction by

[24] The facts of this case do not require us to answer the problem of whether recovery in a suit in either a Federal or insular court for work subsequent to 1938 as to which Act No. 49 and the Fair Labor Standards Act provide for overtime on different bases and for different remedies to enforce the same bars a subsequent suit in the other court for relief arising out of the same operative facts of employment under the statute not invoked in the first case. Would the facts under those circumstances involve the "same" cause of action despite the fact that the claims exist by a virtue of statutes of different legislative bodies providing for distinctive remedies? We leave that question open. "Adjudication should not borrow trouble by worrying about a case not calling for decision." *The Republic of Mexico et al, etc.* v. *Hoffman*, 324 U.S. 30, decided February 15, 1945.) Cf. *D & L. Production Co.* v. *Cunif*, 180 S.W. (2) 205 (Tex., 1944), where suit in a State court *under a private contract of employment* for wages earned after 1938 was held to bar a subsequent state court suit for overtime under the Fair Labor Standards Act for the same employment. Compare footnote 20.

We note in passing that the difficulties resulting from employees' compensation cases where either a Federal or state statute, unlike Act No. 49 and the Fair Labor Standards Act, specifically provides that the remedies for their enforcement in courts of different jurisdictions are mutually exclusive are absent here. *Davis* v. *Dept. of Labor*, 317 U.S. 249; *Magnolia Petroleum Co.* v. *Hunt*, 320 U.S. 430.

the Federal courts, despite the absence of diversity of citizenship, over the non-Federal right, thereby disposing in one suit both controversies arising out of the same operative facts. But when facts like ours and those found in the *Stark* case exist, the Supreme Court says the non-Federal right is a "different" cause of action. Putting temporarily to one side the barrier of lack of jurisdiction, the fact that the non-Federal right is a "different" cause of action carries with it as a corollary that joinder thereof with the Federal claim is permissive, not mandatory. And as to permissive joinder, *Scott, supra,* points out at p. 26 that a plaintiff "will not be compelled to join all the claims which he may have against the defendant . . . Under . . . modern statutes the plaintiff may join all the claims he has against the defendant. It is so provided in Rule 18 of the Federal Rules of Civil Procedure. *He is not compelled, however, to join even those claims which arose out of the same transaction, provided they are different causes of action.*" (Italics ours.) *Norwood* v. *McDonald,* 52 N. E. (2) 67 (Ohio, 1943). An election not to join the second claim therefore does not bar a subsequent independent suit therefor.[25]

We conclude that the public policy against splitting a cause of action—powerful though it be—[26] does not prevent

---

[25] The question of whether joinder of Federal and non-Federal claims is *always* a question of permissive rather than mandatory joinder in the Federal courts—for example, as to claims for work done subsequent to 1938--is not before us, and we make no comment thereon. Shulman and Jaegerman, *supra,* discuss the question exclusively from the *jurisdictional* point of view. In framing a state procedural rule the Legislature or other rule-making authority is concerned only with the problem of whether a joinder of claims is expedient. But for the Federal courts it must first be determined whether the court has power to adjudicate claims proposed to be joined. In the state courts (p. 398) "the question in the main is to what extent may a plaintiff join in one action claims based on entirely separate sets of operative facts. But in the federal courts that question has been considered along with another, namely, to what extent *may* the court consider claims based on non-federal, rather than federal, law even with respect to a single set of operative facts." (Italics ours.)

[26] *People* v. *Lugo, ante.* p. 529, decided February 13, 1945.

suit in the insular courts on a claim for wages under insular Act No. 49 which arose prior to the date of the passage of the Fair Labor Standards Act pursuant to which the rights under the local Act could not have been successfully asserted in a case filed under the Federal Act in the Federal court. Narrowed to these circumstances, we do not by our holding open a Pandora's box of hoary litigation. There is no violation of insular public policy in permitting the instant case to proceed to a determination on the merits. The district court did not err in rejecting the special defense of *res judicata*.

### III

On the merits, it is disquieting to find a district court once more ignoring our opinions in the *Cardona*, the *Muñoz*, and other cases. The plaintiff himself pleaded and proved that his arrangement was for a monthly wage. There is absolutely nothing in the record to justify a finding that the said wage was intended to cover employment for eight hours a day only. Under the statute as it is now written, the plaintiff was therefore paid in full except for double pay for the ninth hour. Taking the plaintiff's own figures, he earned as double pay for the ninth hour, from November 1935 to November 1936, the sum of $32.30 and from November 1936 to October 24, 1938, the sum of $79.78.[27] The total he was entitled to receive was therefore $112.08.

What we have said makes it obvious that the lower court committed error in awarding attorney's fees to the plaintiff. The defendant was justified in resisting a claim for $2,602.36 when it actually owed only $112.08.[28]

---

[27] During the first period he received $35 a month. He alleges he worked 13 hours a day 365 days a year. He therefore worked for $.0885 per hour, and payment for the ninth hour for 365 days at that rate amounts to $32.30.

The second period covers 717 days, during which he received $44 monthly. On a 13 hour a day basis this is $.11127 an hour. And therefore for the ninth hour for 717 days at that hourly rate he should receive $79.78.

[28] What we have said makes it unnecessary to decide here whether the district court can ever award attorney's fees in such cases.

The judgment will be modified to provide for recovery by the plaintiff in the amount of $112.08 without attorney's fees. As thus modified, the judgment will be affirmed.