CARL S. MISSILDINE, Appellee, v. RUTH E. MILLER, Appellant.

No. 45718.

December 9, 1941.

Rehearing Denied March 13, 1942.

C. B. Hextell, for appellee.

Walter F. Maley, for appellant.

Wennerstrum, J.—Plaintiff's action is based upon a charge for attorney fees in the amount of $1,700 asserted to be due him from the defendant appellant under a claimed contract of employment. The defendant denied that she ever personally employed the plaintiff in her individual capacity but contended that, as administratrix of the estate of her deceased husband, William F. Miller, she engaged him as attorney to assist her in legal matters pertaining to the estate. She further asserted that any services performed were rendered to her in her representative capacity as administratrix and not as an individual.

It was the defendant appellant's further contention that after the services were rendered, which are the basis of this action, plaintiff filed his verified claim in the estate of William F. Miller, deceased, and a determination of this claim was made in the probate court of Polk County, Iowa, on November 25, 1940. Defendant appellant further claimed that, by the filing of said claim in probate, plaintiff elected to pursue whatever right or remedy he had for services rendered in the estate proceedings and that this right and remedy which he there asserted was inconsistent with the present action at law and constituted an election of his right and remedy. It was also contended that the plaintiff was barred and estopped from further claiming any liability against the defendant as an individual on what the

defendant claimed was the same cause of action. The trial court withdrew the defense of a prior adjudication and submitted the case to the jury on the question as to the extent of the services rendered and their fair and reasonable value. The jury returned a verdict in favor of the plaintiff for the amount sued for and judgment was entered thereon. The defendant has appealed to this court.

The husband of the appellant, William F. Miller, died in Des Moines, Iowa, on or about December 21, 1938. During the later years of his life he had been engaged in the business of operating amusement, vending and slot machines.

In 1934 an action had been brought against William F. Miller for damages for injuries received by one Merritt as a result of a hunting accident. The suit brought against Miller resulted in a judgment against him in the amount of $16,000. Following the obtaining of the judgment, bankruptcy proceedings were instituted by Miller and after considerable litigation he obtained a discharge in bankruptcy. These proceedings are not particularly involved in the present controversy.

The inventory filed in the probate proceedings showed assets in Miller's estate of the amount of $5,450. However, soon after the opening of the estate it developed that there were government bonds in the amount of $16,000 in a safety deposit box in a Des Moines bank. This box had been rented in the name of the decedent, Miller. There were also government bonds in the approximate amount of $20,500 in a safety deposit box in another Des Moines bank but this box was in the name of Ruth E. Miller, the defendant herein. The defendant appellant claimed that all of the bonds in both of the banks belonged to her but the record shows that the appellant, as administratrix, receipted at the bank for the $16,000 in government bonds. At no time did she list any of these bonds in the estate proceedings.

The original trustee in the bankruptcy proceedings learned of the discovery of the $16,000 in government bonds and the bankruptcy estate was reopened. Thereafter, an action was brought by the trustee in bankruptcy claiming that the $16,000 in government bonds, as well as the other government bonds in the safety deposit box rented in Mrs. Miller's name, were the property of William F. Miller during his lifetime. It was

also contended that all these bonds had belonged to the decedent at the time of the original bankruptcy proceedings and had been wrongfully withheld from the trustee in bankruptcy.

As a result of the action brought in the federal court by the trustee of the bankruptcy estate of William F. Miller, the defendant in this present action, Ruth E. Miller, consulted with the plaintiff in regard to that litigation. The plaintiff in the litigation now before us for review represented defendant in the action, in the federal court in which proceedings a judgment was entered wherein it was decreed that the $16,000 of government bonds discovered in the safety deposit box taken out in the name of William F. Miller had been his property at the time of the original bankruptcy proceedings and that they were subject to administration by the bankruptcy court.

Prior to the last bankruptcy proceedings, Ruth E. Miller, as administratrix of her husband's estate, had paid the plaintiff appellee the sum of $300 for services rendered her in connection with the administration of her husband's estate. Immediately after the judgment was obtained in the federal court, and the question of an appeal was under consideration, the defendant appellant made inquiry of plaintiff as to what his fee was for the prior services in the federal court. Upon further inquiry the plaintiff advised the defendant as to what would be the fee in connection with an appeal to the Circuit Court of Appeals. Because of their inability to reach an agreement as to fees in connection with the services rendered and to be rendered the defendant severed her relations with the plaintiff.

Thereafter the plaintiff filed his claim in the probate court of Polk County against the estate for services rendered in the sum of $2,000. Another attorney who had assisted the plaintiff in the federal court case brought against Mrs. Miller in her individual capacity, and as administratrix, filed a claim for $500 for services rendered. Upon a hearing of these claims in the probate court the referee in probate of the district court found and recommended that the attorney who assisted the plaintiff in the federal court case had no claim for services against the estate and further held that there should be allowed to the plaintiff the sum of $300 for both ordinary and extraordinary services in connection with the administration of the

estate. The referee in probate further held that inasmuch as the amount allowed had already been paid the plaintiff herein that he was not entitled to any further fees from the estate. These findings were approved and confirmed in an order later signed by one of the judges of the Polk County district court. There was no appeal from this order.

After the referee in probate had submitted his findings the plaintiff appellee commenced this action at law in the district court of Polk County, Iowa, for fees in the amount of $2,000 claimed to be due him for services rendered the defendant appellant. The claim was reduced to $1,700 by a later amendment. In connection with the law action it was also claimed and asserted by the plaintiff that prior to the death of William F. Miller he had been employed by him to represent certain defendants against whom criminal actions had been commenced, and in whose place of business slot machines owned by Miller had been operated. These criminal actions were pending at the time of the death of Miller and there was testimony that Ruth E. Miller, the defendant appellant, authorized the plaintiff to further represent these defendants.

In connection with the consideration of the matters that were before the district court and which are now before us on appeal it is perhaps advisable to set forth the position taken by the defendant in the probate proceedings that were had in the Polk County district court. In those proceedings the administratrix of the estate of William F. Miller filed objections to the allowance for attorney fees. Her objections, in part, were as follows:

"4. That this administratrix was never involved in any criminal cases either personally or as administratrix and that this administratrix never employed or authorized said attorney to render any services in briefing criminal cases or trying such criminal cases in court.

"5. * * *.

"6. That the services alleged to have been performed by said claimant in his itemized statement set forth in said application for allowance for attorney fees in the Federal Court were not services necessary in the administration of said estate

and that said proceedings only resulted in a judgment being rendered against this administratrix personally in the sum of $16,000 and did not involve in any manner property belonging to the estate of said decedent but involved property personally belonging to this administratrix.''

These statements in the objections are of particular importance inasmuch as they indicate the attitude taken by the defendant appellant at that time. They will be commented upon later in the opinion since there is a claimed variance in the position taken by this defendant in the two proceedings.

The legal propositions presented for our consideration, as claimed by appellant, may be summarized as follows:

That in filing his claim in the estate proceedings and in now bringing the law action, there is a splitting of the cause of action, which procedure is not proper, and therefore plaintiff is precluded from pursuing this present action by reason of his prior election to present an inconsistent right and remedy in the probate court; that there was an error on the part of the court in its instruction wherein it stated that ''* * * it appears without controversy or dispute that Carl S. Missildine was employed to render legal services as an attorney for the defendant in this case'' and that the only question for the jury to decide was what services were rendered and their value; and that the court was in error in refusing to give certain requested instructions which is claimed embodied the defendant's theory of the case. These and other matters suggested as errors will be commented upon in our further consideration of the case.

We have studied defendant's first assignment of error wherein it is asserted that there was a splitting of the causes of action and that the plaintiff, in filing his claim in the probate court, had elected as to the course of action which he proposed to take and was thereby estopped to bring the present law action. We are of the opinion that this claimed error is without merit.

The general rule as noted in 1 C. J. S. 1310, section 102f (1), ''Actions'', in a situation such as we have in this case, is as follows:

''The rule [as to splitting of causes of actions] applies only to claims and demands which are parts of one cause of

action, and are recoverable in the first action; it does not prevent a party from suing for a part of a cause of action, although it does preclude him from thereafter suing for the other portion, unless the claim was not due at the time of the first action; *nor does it prevent an unsuccessful party from bringing suit a second time on a new theory* [italics supplied]; nor does it prevent the prosecution of separate actions on separate causes of action.''

There are numerous Iowa authorities on the proposition that where a cause has been tried on a mistaken theory that there is no splitting of causes of action if it is again tried on another and correct theory. In the case of Hull v. Padgett, 207 Iowa 430, 446, 223 N. W. 154, 161, we find a statement by this court that seems quite applicable. It is there stated:

"Defendants insist that, by filing claim against the estate, plaintiff made an election of remedies. An election is a choice of remedies. One who has not the choice may not elect. If there was a partnership, the plaintiff had no choice. If he was a partner, he could not recover wages without the assent of the defendants. The claim was filed in the endeavor to obtain a settlement. The effort was abortive. Plaintiff had no remedy by way of recovery of wages. His fruitless effort to settle, and his filing of a claim to that end, were a resort to a remedy which did not exist, and did not constitute an election. [Citing cases.] Furthermore, the plaintiff was laboring under the belief that he had no remedy; that he could not prove the partnership. He did not make voluntary choice between filing claim for wages and demanding his interest as a partner, nor did he follow his claim for wages. Defendants rejected the claim for wages; were not prejudiced. There is no estoppel, and no election. * * *.''

In 20 C. J. 21, section 17, 28 C. J. S. 1080, section 12, ''Election of Remedies'', we find the following statement:

''An election can exist only where there is a choice between two or more inconsistent remedies actually existing at the time the election is made. Hence the fact that a party

misconceives his right, or through mistake attempts to exercise a right to which he is not entitled, or prosecutes an action based upon a remedial right which he erroneously supposes he has, and is defeated because of such error, does not constitute a conclusive election, and does not preclude him from thereafter prosecuting an action based upon an inconsistent remedial right.''

The statement of law as just previously set forth is approved in the following Iowa cases: Wells v. Western Union Telegraph Co., 144 Iowa 605, 614, 123 N. W. 371, 24 L. R. A., N. S., 1045, 138 Am. St. Rep. 317; Matheson v. Matheson, 139 Iowa 511, 515, 516, 117 N. W. 755, 18 L. R. A., N. S., 1167; Zimmerman v. Robinson & Co., 128 Iowa 72, 74, 102 N. W. 814, 5 Ann. Cas. 960; Lemon v. Sigourney Sav. Bank, 131 Iowa 79, 86, 87, 108 N. W. 104; Dooley v. Crabtree, 134 Iowa 465, 468, 109 N. W. 889; Hoskin v. West, 226 Iowa 612, 621, 284 N. W. 809; Reinertson v. Struthers, 201 Iowa 1186, 1189, 1190, 207 N. W. 247.

In connection with defendant's objections to the instruction complained of, which was to the effect that there was no controversy as to the employment of the plaintiff to render legal services to the defendant, it appears to us that there is merit to this claimed error. It has been noted previously in this opinion that the defendant in this case, at the time the claim of Missildine was under consideration in the probate court, filed objections as administratrix which have heretofore been set out in part. The administratrix there contended that the services of the attorney were not rendered to the estate. It is urged by the plaintiff that the defendant is now taking an inconsistent position and that she is thereby estopped from objecting to the claimed error of the court wherein it stated that there was no controversy. Reference to that portion of the defendant's objections to the allowance of fees in the probate court discloses the fact that even though the administratrix of the estate alleged there that she had not employed plaintiff in her capacity as administratrix to render any service other than that of giving attention to the estate proceedings, it does not further disclose any statement where-

in she affirmatively stated that she as an individual had employed the plaintiff in the other matters.

In the cross-examination of the plaintiff, he testified in relation to his services and arrangements with the defendant in part as follows:

"I don't remember the conversation. I talked to her individually at the time, I don't think anything was mentioned between the two of us as to what part of it was for the estate or what part was for her personally."

Mrs. Miller testified that there was no conversation between Mr. Missildine and her as to his appearing for her individually and as to his making a charge for his services to her as an individual in the federal court case.

It appears from the record that there was no definite arrangement between the plaintiff and the defendant as to the service rendered in the federal court case. Plaintiff had been employed in the estate proceedings and had rendered services to the administratrix and continued to represent defendant when she was sued individually by the referee in bankruptcy. Consequently it appears to us that the trial court was not justified in stating that there was no controversy between the two parties as to the fact that there was an employment arrangement entered into. The burden is on the plaintiff to substantiate his contract arrangement.

In 5 Am. Jur. 374, section 188, it is stated:

"The usual rules that the burden of proof rests upon the plaintiff to establish his case by a fair preponderance of the evidence, but that matters relied upon by the defendant by way of defense must be established by him, apply in actions by attorneys against clients to recover compensation. The attorney has the burden of proving his right to fees for the services rendered by him. He must show that a contract, express or implied, was entered into; performance thereof on his part, or sufficient reason for nonperformance, * * *."

It is our judgment that under the facts in this case the question as to whether or not there was any contract, express or implied, was a matter to be passed upon by the jury and

that under the record as disclosed the court was not justified in limiting the jury to the question as to the extent of the services and their value.

The court in its instructions submitted to the jury the question as to whether or not Mrs. Miller employed the plaintiff to represent certain defendants in the criminal cases that were pending at the time of Mr. Miller's death but it did not permit the jury to pass upon the question as to whether or not there was a contract of employment, express or implied, to represent the defendant individually in the federal court case.

We believe the court was in error in not submitting this question to the jury.

It is therefore our conclusion that this case should be and it is reversed and remanded for the reasons previously stated. —Reversed and remanded.

MILLER, C. J., and GARFIELD, BLISS, STIGER, HALE, and MITCHELL, JJ., concur.