CLEMENTS *v.* CONSTANTINE.

1. ACTION—SPLITTING CAUSE OF ACTION.
   A cause of action that is single cannot be split and made the subject of several suits.

2. SAME—SPLITTING CAUSE OF ACTION—JUDGMENT—RES JUDICATA.
   Should there be a splitting of a cause of action and plaintiff proceed to judgment on the first case, his entire cause becomes merged therein and it is *res judicata* as to second action.

3. SAME—CAUSE OF ACTION.
   The term "cause of action" partakes of both procedure and substance.

4. SAME—VEXATIOUS LITIGATION—FINALITY.
   One suit which has given the plaintiff a reasonable chance to have a fair decision on the validity of his complaint should be sufficient, as the defendant has a right to be spared vexatious litigation and the State itself has an interest in the finality of litigation.

5. COURTS—PROCEDURE—REMEDY.
   All procedure is merely a methodical means whereby the court reaches out to restore rights and remedy wrongs and must never become more important than the purpose it seeks to accomplish.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 9] 1 Am Jur, Actions § 96 *et seq.*
[3] 1 Am Jur, Actions § 2.
[6–8] 30 Am Jur, Judgments § 172 *et seq.*
[6–8] Distinction between judgment as bar to cause of action and as estoppel as to particular fact.  88 ALR 574.

6. JUDGMENT—SPECIFIC PERFORMANCE—ASSUMPSIT—BROKER'S COM-
MISSIONS.

    Decree in suit for specific performance of contract that the
instrument sued upon was not an option to buy, but a broker's
agreement, was not *res judicata* of action of assumpsit for
commission by the personal representative of the broker's estate
wherein it was admitted he had produced a purchaser ready,
able and willing to buy, the causes of action in the 2 suits
not being the same and different evidence being necessary to
support the 2 claims.

7. SAME—RES JUDICATA—IDENTITY OF MATTER IN ISSUE.

    The first essential of the rule of *res judicata* is the identity of the
matter in issue.

8. SAME—RES JUDICATA.

    A matter or question, either of law or fact, is *res judicata* as
to adverse parties and their respective privies, if it was a
material issue in the proceeding, directly involved, and not
merely incidentally cognizable nor collaterally in question,
and was adjudicated after a contest, by a final judgment on
the merits.

9. ACTION—SPLITTING CAUSE OF ACTION—NEW THEORY—WRONG
REMEDY.

    The rule against splitting a cause of action does not prevent a
second action on a new theory, where in the first action plaintiff
adopted the wrong remedy.

Appeal from Wayne; Fitzgerald (Neal), J. Submitted October 5, 1955. (Docket No. 25, Calendar No. 46,589.) Decided December 28, 1955.

Assumpsit by Thomas L. Clements, administrator of the estate of Thomas W. Clements, deceased, against Irma S. Constantine for commission on sale of real estate. Judgment for plaintiff. Defendant appeals. Affirmed.

*Donald P. Schuur* and *Patrick J. Keating,* for plaintiff.

*Ernest Wunsch* and *Arthur A. Ude,* for defendant.

SMITH, J. This is an action at law for a broker's commission. The controversy arose in this way: On July 13, 1950, Irma S. Constantine and her husband, Peter Constantine, entered into a written agreement with plaintiff's decedent. In it they granted plaintiff's decedent, or his assigns, an option to purchase certain real estate located in the city of Detroit. The agreement, written upon a Detroit real-estate board "Option Form," provided for the purchase of the described property for the sum of $125,000, upon condition that there be an acceptance of the option in writing on or before the expiration date, accompanied by a $2,000 deposit on the purchase price. It was provided, also, that the sale be consummated within 90 days (after delivery of an abstract) by a payment of $25,000 down, the balance to be paid according to the terms of a described land contract. At the foot of the agreement appeared an additional paragraph entitled "Commission Agreement," separately signed by the defendant and her husband, which stated:

"I understand that you are acting for an undisclosed principal in taking the above option and in the event the above option is exercised by your assignee and the sale consummated thereunder, I will, upon consummation of sale pay to you a commission of 3% or $3,750 which is the amount established by the Detroit real-estate board scale of commissions."

On October 6, 1950 (after several extensions) plaintiff's decedent assigned his rights under the option agreement to the Kendrick Realty Company. On the same day the assignee gave notice to the defendant and her husband of its acceptance of the option and tendered therewith a certified check in the sum of $2,000, in accordance with the terms of the option. The defendant and her husband refused

to perform the agreement and on October 13, 1950, plaintiff's decedent and Charles L. Kendrick, doing business as Kendrick Realty Company, as plaintiffs, filed a bill of complaint in the Wayne county circuit court praying for specific performance of the agreement. Defendant Constantine and her husband filed a cross bill, alleging fraud and conspiracy upon the part of the plaintiffs, prayed that the agreement be "cancelled and held for naught," and in a supplemental answer to plaintiff's bill of complaint alleged:

"That the so-called option agreement, exhibit 'A' is not in fact, an option; that it is the claim of the defendants that it was a contract listing the said property with a real-estate broker for sale, containing an option provision for the purpose of facilitating a sale as an incident thereto."

When the suit came on for hearing before Judge Alton H. Noe, sitting in Wayne circuit court, it was stipulated upon the record that Thomas L. Clements, administrator of the estate of Thomas W. Clements, deceased, be substituted in place of the deceased plaintiff, who had died on November 23, 1952, and "that Peter Constantine died December 3, 1950, * * * and he has no interest in the property involved in this lawsuit by virtue either of prior assignments by himself to his wife, or by virtue of survivorship of Mrs. Constantine of property owned as tenants by the entirety." At the conclusion of the hearing the trial judge was of the opinion that decision was controlled by the case of *Greenough* v. *Willcox,* 238 Mich 52, holding that the option agreement in question was not an option to purchase, but actually a listing agreement. A decree dismissing plaintiffs' bill of complaint was entered, from which the plaintiffs appealed to this Court. The appeal was subsequently dismissed upon stipulation of the

respective parties, after the record on appeal was filed with this Court.

We come now to the case before us. On January 28, 1955, the plaintiff filed an action at law in assumpsit for the commission due his decedent under the terms of the option agreement. Defendant in her answer admitted the execution of the agreement, that plaintiff's decedent had obtained a purchaser, ready, willing and able to purchase, and, further, that she and her deceased husband had refused to perform. As a bar to recovery in this action, however, defendant pleaded the defense of *res judicata,* and, by amendment to answer, that plaintiff had split his cause of action. The action came on for trial without a jury on April 11, 1955, at which it was stipulated that the record on appeal in the prior chancery suit between the parties be admitted in evidence, together with the originals of plaintiff's exhibits in the instant case (option form, extensions, option assignment, notice of acceptance), and, finally, that the matter be submitted to the court on the questions of law involved. Legal arguments of counsel were heard the following day. On April 25, 1955, the court filed its opinion and rendered judgment for plaintiff in the sum of $3,750, plus interest and costs. Motions for new trial and stay of proceedings were filed by defendant on May 3, 1955. The motion for new trial was subsequently denied and the stay of proceedings granted pending an appeal to this Court. Defendant has taken a general appeal from the adverse judgment entered below.

It has long been established that a plaintiff cannot litigate his case piecemeal. "If the cause of action is single, it cannot be split and made the subject of several suits," *Tuttle* v. *Everhot Heater Co.,* 264 Mich 60, 63. Should there have been a splitting, the first case having gone to judgment, the plaintiff's cause of action is merged in it if he wins

and barred by it if he loses. The first action becomes *res judicata* as to the second.

The statement is deceptively simple. But the difficulty with applying the rule that a litigant cannot split a cause of action arises from the fact that courts cannot agree upon what is meant by "splitting" and what is meant by "a cause of action." As Schopflocher puts it in his study, "What is a Single Cause of Action for the Purpose of the Doctrine of Res Judicata," 21 Oregon LR 319:

"One of the great difficulties in determining 'what is a cause of action' for the purpose of the doctrine of *res judicata* is the vague and indefinite character of the term 'cause of action' as used by the courts."

The point is well taken but it should not be overlooked, also, that under our statute the term "cause of action" has many meanings and many faces. It partakes of both procedure and substance (See Michigan Court Rule No 21 [1945]; Federal Rules of Civil Procedure, Rule No 8). It is a point of departure with respect to limitations of action, and we find it used as well with respect to such dissimilar concepts as venue and joinder. Thus it is a forbidding, if not impossible, task to define what is meant by "splitting a cause of action." Many of the difficulties in this field have, in fact, arisen from the definition process and the attempts to fit the facts to the Procrustean bed of definition. It would seem more fruitful to ascertain the policies behind the rule forbidding the splitting of a "cause of action," as the term is used with respect to repeated litigation, following which we may proceed to determine whether or not these policies were offended by what was sought to be done in the case awaiting our decision.

From early times there has been a principle, variously enunciated, that one suit, which has given the

complaining citizen a reasonable chance to have a fair decision on the validity of his complaint, should be sufficient. Not only has the defendant a right to be spared vexatious litigation, *Dutton* v. *Shaw,* 35 Mich 431, but the State itself has an interest in the finality of litigation. *Interest reipublicae ut sit finis litium.* 2 Freeman on Judgments (5th ed, 1925), § 626, Public Policy Basis of Doctrine, p 1318; Millar, The Historical Relation of Estoppel by Record to Res Judicata, 35 Illinois LR 41.

Had this principle not a competitor we would have been spared much perplexity. But it has. Behind all of this is a human being, the alleged victim of someone's wrong, asserting with insistence, that a part of his claim (or a part of the same transaction) has not been heard. He reminds us that, in the words of the New York court of appeals (*Clark* v. *Kirby,* 243 NY 295 [153 NE 79]) that:

"All procedure is merely a methodical means whereby the court reaches out to restore rights and remedy wrongs; it must never become more important than the purpose it seeks to accomplish." (Syllabus.)

Thus our problem: Shall we put an end to the litigation or shall we put an end to his right to relief? This decision is no "push over." So it is that we find the harsh fabric of the rule embroidered with exceptions. (It was Cleary, in his Res Judicata Re-Examined, 57 Yale LJ 339, 349, who commented, with an impressive array of cases in support, that the "courts themselves have not been happy over results often apparently required by *res judicata.*")

Against this background, and with these competing considerations, let us again approach our problem. In shortest form it is this: Our plaintiff (in the first action) thought he had an option for the

purchase of the property. But when his bill of specific performance was tried the court held that his instrument was not an option to buy, but a broker's agreement. He was an agent, not a buyer. His next action was logic itself. He said (in his second action, the one before us), since I have an agency agreement, and I produced a purchaser ready, able, and willing to buy (this is not disputed), I want my commission. The trial court held for him, being of the opinion that there had been no splitting of his cause of action, that the suit was not *res judicata* and that the plaintiff had merely erred in his choice of remedy.

The result reached by the trial court was correct. There has been no adjudication of plaintiff's right to a commission, only of his right to purchase the property. Defendant has not been subject to vexatious litigation as that term is here employed. All litigation is presumably vexatious but that does not mean that a defendant has a right to be sued only once with respect to all of the alleged wrongs which may arise out of a given business transaction. The State's interest in the finality of litigation is not offended. The litigation over the claimed commission is to be heard for the first time. Thus the principles opposing the suit (supporting the claim of splitting, of *res judicata*) have no application.

Having examined the rule and the policies behind it, which, we have determined, have not been offended, we will return to the traditional language of the cases and state that the former action was not a bar to this action because the causes of action in the 2 suits were not the same. As we pointed out in *LeRoy* v. *Collins*, 165 Mich 380, 381:

"The first essential of the rule of *res judicata* is the identity of the matter in issue. The 'matter in issue' is defined to be 'that matter upon which the

plaintiff proceeds by his action, and which the defendant controverts by his pleadings.' See Chand, Res Judicata, p 35. If the same subject matter comes in question in a second action in a court of last resort, it is bound by its own former decision. Bigelow on Estoppel (1st ed), p 16.

" 'A matter or question, either of law or fact, is *res judicata,* or set at rest, as to adverse parties and their respective privies, if it was a material issue in the proceeding, directly involved, and not merely incidentally cognizable nor collaterally in question, and was adjudicated after a contest, by a final judgment on the merits.' 1 Van Fleet, Res Judicata, p 2."

What was in issue in the former action? Whether or not the complainants had a right to purchase the land. The claim was of right of ownership, not right to commissions. The second action is based upon a contract to pay a commission and the plaintiff's right to that commission under the contract. The one claimed title. The other denied it. The same evidence would not support the 2 actions. There were, in fact, 2 causes of action, successively asserted.

In the interest of clarity we should point out that same result has often been reached upon the theory of election of remedies, it being held that resort to a remedy which does not exist is not an election in any true sense. *Missildine* v. *Miller,* 231 Iowa 371 (1 NW2d 110). As is said in 1 CJS, Actions, § 102, pp 1310, 1311:

"The rule (against splitting) does not prevent plaintiff from suing for part of a single cause of action; it applies only where the claims or demands are divided and made the basis of several actions; and if he does sue for a part, it merely precludes him from thereafter maintaining another action for the other portion. Nor does the rule prevent a second

action on a new theory where in the first action plaintiff adopted the wrong remedy."

It is the latter sentence that holds significance for us, and it is familiar learning. Thus, when a plaintiff misconceives his remedy before the chancellor and is remitted to the law side of the court because he there has an adequate remedy, he is not properly vulnerable to the charge that he has "split his cause of action." He sought not to make 2 actions grow in the soil of 1, to take "2 bites from the cherry." He has merely misconceived his remedy.

The principle finds wide application. Thus it was held by the New York court of appeals that a plaintiff who mistakenly thought he had a partnership agreement, and unsuccessfully sought dissolution and accounting, was not thereafter precluded from suing for his labor and services, the court saying, in part:

"When a suit fails in consequence of a want of jurisdiction, or because the plaintiff misconceived the remedy, or did not bring the proper parties before the court, and not from any inherent defect, the substance of the cause is left at large, and may be made the subject of another action." *Marsh* v. *Masterton,* 101 NY 401, 407 (5 NE 59).

The language of the court in *Harding* v. *Hale,* 2 Gray (68 Mass) 399, also is applicable to the situation before us:

"The judgment in the first did not negative the cause of action relied upon in the second, but affirmed its existence and pointed the way to a better writ."

See, also, *Stothard* v. *Shanley,* 166 Minn 134 (207 NW 198), a case having some similarity to that before us, wherein it was held that (syllabus):

"An adverse judgment in an action in which a party sought to enforce a parol contract to convey

a parcel of land in payment for services rendered, does not bar him from maintaining an action to recover for the services."

It follows that there has been no splitting of the cause of action and that the defense of *res judicata* is not applicable to the case before us. It is not necessary to decision that we discuss the other points made by counsel.

The judgment of the lower court is affirmed. Costs to appellee.

BUTZEL, SHARPE, REID, and KELLY, JJ., concurred with SMITH, J.

CARR, C. J., and BOYLES and DETHMERS, JJ., concurred in the result.