PURIFICATION SYSTEMS, INC v THE MASTAN COMPANY, INC

1. JUDGMENT—RES JUDICATA—CONTRACT.

A plaintiff's second lawsuit based on implied contract or *quantum meruit* recovery is barred by the rule of *res judicata* where the first lawsuit instituted by the plaintiff arose out of the same transaction or occurrence as the second lawsuit, recovery in the lawsuits could have been claimed under express or implied contract and plaintiff chose to proceed in the first suit on express contract only, and the cause proceeded to final adjudication against him.

2. FRAUDS, STATUTE OF—INTEREST IN LAND—MORTGAGE FINDER'S FEE.

Recovery for services in introducing the defendant to a source for a mortgage loan commitment will not be allowed where recovery is based only on oral agreement because a mortgage is an interest in real estate and the percentage due the plaintiff upon the financing alleged to have been obtained is indistinguishable from a commission; there can be no recovery on *quantum meruit*, even though the service was rendered and accepted (MCLA 566.132).

Appeal from Wayne, Robert W. McIntyre, J. Submitted Division 1 February 4, 1972, at Detroit. (Docket No. 11756.) Decided April 27, 1972. Leave to appeal denied, 388 Mich 751.

Complaint by Purification Systems, Inc., against The Mastan Company, Inc., for payment of fees. Accelerated judgment for defendant. Plaintiff appeals. Affirmed.

*Jaffe, Snider, Raitt, Garratt & Heuer,* for plaintiff.

*Smith, Miro, Hirsch & Brody,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1] 46 Am Jur 2d, Judgments § 394 *et seq.*
[2] 49 Am Jur, Statute of Frauds § 154 *et seq.*

Before: BRONSON, P. J., and V. J. BRENNAN and O'HARA,* JJ.

O'HARA, J. Plaintiff appeals of right from a judgment in the circuit court dismissing its complaint and granting defendant's motion for an accelerated judgment.

The first issue presented is whether plaintiff's asserted right to recovery is controlled by a prior adjudication, thus barring this claim under the rule of *res judicata.*

A brief recapitulation of the salient facts involved in the prior action is requisite to a proper understanding of the case at bar. The first action between the present parties was commenced on March 16, 1966, when plaintiff, then operating under the name of CAC, Inc., filed a complaint in which it alleged that the defendant was in its debt in the amount of $8,000 pursuant to an express oral contract. Under the alleged contract, plaintiff contended that defendant had agreed to pay plaintiff an $8,000 fee for acting as a broker in arranging the issuance of a "stand-by mortgage commitment" between the defendant and a third party. The complaint further alleged that the defendant had breached the oral agreement by its refusal to pay plaintiff the agreed sum.

Defendant's answer denied the existence of any contract and raised the affirmative defense of the statute of frauds.

The case was then tried to the court. Plaintiff, in an effort to establish the existence of a contract, attempted to introduce evidence of a telephone conversation which it had with defendant's agent, since deceased. Defendant objected to the admission of this testimony under Michigan dead man's act, MCLA 600.2166; MSA 27A.2166. The trial court sustained defendant's objection. This re-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

sulted in a failure of proof of the existence of an oral contract. Accordingly, a judgment in favor of defendant was entered on January 28, 1971. So far as the record shows, the plaintiff has not appealed from this judgment.

Prior to the entry of judgment in this first action, the plaintiff filed a second complaint on December 10, 1970, alleging that "defendant impliedly promised, agreed, and contracted that, if plaintiff introduced defendant to any prospective commercial borrower to whom defendant ultimately made a loan or loan commitment, defendant would pay plaintiff, as a broker, the regular, reasonable fee for such service".

Defendant, in this second action, moved for an accelerated judgment pursuant to GCR 1963, 116.1. The trial court held that plaintiff's second suit was barred by the action and judgment in the first. We quote:

> "In the case at bar, the claim arises from the identical facts, occurrences and circumstances cited in the first trial. The legal theory upon which the first trial was based was the alleged express oral contract. The theory alleged here now is an implied contract. Neither legal theory creates a separate claim different from the facts or circumstances out of which the cause of action arose. The present suit is not based upon a new claim, merely a different theory of law upon which to bring the same claim."

We find no controlling Michigan case precedent.

It is plaintiff's precise point that under a cited general rule (50 CJS, Judgments, § 649, p 90) a judgment for a defendant will not bar a subsequent action by plaintiff based upon a new and more correct theory. This, plaintiff argues, applies where plaintiff as here, in an action to recover on express contract, has been defeated on the ground

that the contract was not proved. Nevertheless, plaintiff contends it thereafter may sue and recover on the theory of an implied contract or *quantum meruit*. It cites a generous amount of outstate authority in support of the position and relies heavily upon *Clements v Constantine,* 344 Mich 446 (1955). We think its reliance on *Clements, supra,* is ill-founded.

While it is true the opinion contains an extended discussion of the doctrine of *res judicata,* vis-à-vis, splitting causes of action and misconceived remedies, the visceral holding of the case is that the first action was for specific performance to enforce an option to purchase. The trial court held that plaintiff did not have an option to buy, but rather a broker's agreement. Plaintiff, pursuant to that holding, began a new action to collect its commission. This is a far cry from the case at bar where there is no dispute that recovery was sought for personal service in introducing defendant to a source of a mortgage loan commitment. These services, whether rendered pursuant to an express contract or under the *quantum meruit* theory, arose out of absolutely and admittedly identical facts. *Clements* is not plaintiff's salvation.

But, says plaintiff, if not by virtue of general rule authority, what of the specific language in GCR 1963, 203.1 that "failure by motion or at the pretrial conference to object * * * to a failure to join claims required to be joined constitutes a waiver of the required joinder rules, and the judgment shall not merge more than the claims actually litigated".

Candor compels that we admit that this language is difficult of reconciliation with the first part of the same subsection:

"A complaint shall state as a claim every claim

either legal or equitable which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

Pretty obviously in our case, the only parties involved are the named plaintiff and defendant. Just as obviously the two claims of express contract and *quantum meruit* arose out of the same transaction and occurrence. Equally obviously, defendant did not, so far as we can find, by motion or at the pretrial conference, object to the failure to join claims required to be joined.

We looked first to the committee notes to supply some clue as to the intention of the architects of the rule. We quote:

"The strictness of the compulsory joinder provision of subrule 203.1 and its all inclusive character is mitigated in a sensible way by its last sentence and by the provisions of Rule 301 requiring the pre-trial conference judge to inquire as to whether or not all claims required to be joined are joined.

* * *

"This is a broad rule of required joinder and it is predicated on the theory of requiring the parties to settle all matters arising out of the transaction or occurrence in one lawsuit. It also provides, however, a sensible method of deciding what matters do arise out of the transaction or occurrence in the first litigation and if the parties (the plaintiff by suing on less than all; the defendant by not raising the question) desire to litigate their claims in two pieces, the harshness of the merger doctrine should not prejudice them. In other words, the scope of the action that will be merged will be determined in the first litigation when it can be corrected rather than in the second litigation when it cannot be corrected."

We attempted to apply this comment to the case at bar. It appears the plaintiff here either inadvertently or intentionally violated the first part of the rule. The defendant either inadvertently or intentionally violated the second part of the rule and the trial judge omitted complying with another related rule. Our problem then, it seems, is to equate the relative responsibility of each remiss party and make a decision. Of such stuff is judicial migraine born.

However, we are apparently not alone in our quandary. *California Joinder Reform,* 23 Stan L Rev 1 (1970), helpfully notes that Michigan appears to be the only state to have a rule of mandatory joinder. The article continues (p 11):

> "There are obvious advantages in requiring one party to join all causes of action he has against another party in the case. * * * [I]t is not at all clear why plaintiff should have an option to determine when the advantages of joinder should accrue. Such a choice provides a tactical weapon available, at least in the first instance, only to one party."

We feel required to add that the only alternative for the defendant is in effect to plead plaintiff's case for it a rather quixotic result at best. We look further.

Professor Richard Miller of Wayne State Law School, with a well-merited acknowledgment of Circuit Judge Victor Baum's assistance, begins his article on *Splitting a Cause of Action Under the New Michigan Court Rules: Alternative Interpretations* with the observation that at the 1962 Michigan Judicial Conference, "[T]he rules provision which evoked the greatest interest, if not the greatest confusion, was a clause designed to mitigate some of the effects of the traditional rule

against splitting a cause of action". 8 Wayne L Rev 497 (1961–1962). We believe we can understand why.

Professor Robert Meisenholder of the University of Washington Law School, writing in 61 Mich L Rev 1389, 1418 (1963), wisely counsels:

"In practice, the rule may prove to be a desirable reform. Nevertheless, it appears that there is sufficient doubt concerning its probable effectiveness and advantages to justify postponement of its use as a model elsewhere."

We cannot disagree.

We have weighed the "traditional" view, and its "harshness" on plaintiffs, as against the "vexatious" and "costly" effect of piecemeal adjudication on defendants. We must make a choice.

We hold that where as here the claim asserted by plaintiff arises out of one transaction or occurrence and recovery can be claimed under express or implied contract, and plaintiff chooses to proceed on express contract only, and the cause proceeds to final adjudication against him, his later assertion of a claim under implied contract or *quantum meruit* recovery is barred by the rule of *res judicata.*

We make an additional holding, lest we are reversed on the first holding by our Supreme Court. We do so in order to avoid a costly and possibly needless remand.

Defendant specifically pleaded the Statute of Frauds, MCLA 566.132; MSA 26.922, as a bar to plaintiff's claim. The trial court did not pass upon this issue.

It is uncontested that the service for which plaintiff seeks to recover was for introducing defendant to a source for a mortgage loan commit-

ment. A mortgage is an interest in real estate. *Tromley v Lange,* 236 Mich 240 (1926); *Aetna Mortgage Co v Dembs,* 13 Mich App 686 (1968). Plaintiff claimed a percentage due upon the financing alleged to have been obtained. Such a percentage in law is indistinguishable from a commission.

Mr. Justice WIEST, for a unanimous Supreme Court, succinctly settled the question in *Mead v Rehm,* 256 Mich 488, 490 (1932):

"A verbal agreement to pay the commission is rendered absolutely void by the statute, and there can be no recovery on *quantum meruit,* even though the service was rendered and accepted."

For both reasons herein discussed, we affirm. Defendant may tax costs.

All concurred.