ROGERS v COLONIAL FEDERAL SAVINGS & LOAN
ASSOCIATION OF GROSSE POINTE WOODS

Docket No. 58657. Argued November 2, 1977 (Calendar No. 3).—
Decided February 8, 1979. Rehearing granted 406 Mich 1121.
Order dismissing appeal *post,* p 637.

Blanche Rogers brought an action under the Federal Truth in
Lending Act for rescission of a mortgage and recovery of real
property against Colonial Federal Savings and Loan Associa-
tion of Grosse Pointe Woods. The Wayne Circuit Court, Thomas
Roumell, J., granted accelerated judgment for the defendant on
the ground that the action was barred by res judicata and
election of remedies because of the voluntary dismissal with
prejudice of a previous action under state law against defend-
ant Colonial. The Court of Appeals, Quinn, P.J., and Walsh and
Bach, JJ., affirmed in a memorandum opinion (Docket No.
24896). Plaintiff appeals. *Held:*

The defendant, by operation of GCR 1963, 203.1, has waived
any res judicata defenses it may have had as a result of its
failure to make timely objection in the original suit.

Justice Williams, who was joined by Justices Levin and Blair
Moody, Jr., wrote for reversal:

1. The doctrine of res judicata recognizes that endless litiga-
tion leads to vexation, confusion and chaos for the litigants,
and inefficient use of judicial time. The rule has been stated in
more than one way, but, whatever the correct scope of the rule
may be, its main purpose is to insure finality in a cause of
action.

2. The first sentence of GCR 1963, 203.1 codifies the long-
standing decisional rule against splitting a cause of action.
That rule is grounded on the same general policy considera-

REFERENCES FOR POINTS IN HEADNOTES
[1, 8, 10] 46 Am Jur 2d, Judgments § 394 *et seq.*
[2] 46 Am Jur 2d, Judgments § 406.
[3, 5-7, 13, 14] 46 Am Jur 2d, Judgments §§ 445, 585.
[4, 9] 46 Am Jur 2d, Judgments §§ 390-394, 470.
[11] 46 Am Jur 2d, Judgments §§ 405, 474, 476, 487.
[12] 46 Am Jur 2d, Judgments § 479.

tions as the doctrine of res judicata and, to the extent that it encompasses or mitigates res judicata, the rule must control.

3. The court rule specifically states that failure to object to a failure to join claims required to be joined constitutes a waiver of the required joinder rules. The language is clear. Its obvious effect is that the implied waiver by the defendant precludes an assertion of the waived defense in a subsequent suit. The defenses of merger and bar have always been subject to waiver by the defendant. The only change of the common law in the court rule is that the defendant's objection must be asserted during the first suit, which mitigates the harshness of the prior common-law rule by requiring the objection when the plaintiff has an opportunity to cure the defect of the failure to join.

4. The court rule, in the first clause of the second sentence, unequivocally waives all joinders, whether the plaintiff won or lost the prior action. The language of the second clause of that sentence is subordinate to that of the first clause. The term "merger" is used in its general sense, rather than to limit the application of the court rule to a "merger" (where the prior judgment was for the plaintiff). Waiver of the joinder rules necessarily includes waiver of the defense of "bar" (where the prior judgment was against the plaintiff). The primary purpose of the waiver provision is to encourage the defendant to assert, by motion, an objection when the defect can be cured. However, at that time it could not be known whether the plaintiff would win or lose. If the waiver provision were solely applied to actions which, once litigated, came within the technical definition of merger, the certainty which the rule intended would be frustrated because there would be no certainty until the plaintiff's success in the original action was determined. If a choice had been intended in applying the rule it would appear far more logical to assist the plaintiff who suffered the most under the traditional compulsory joinder rule, *i.e.,* the plaintiff who has been unsuccessful in the original action and therefore recovered nothing from the defendant. Therefore, the waiver provision of the court rule means what it says. A defendant who fails to object to a plaintiff's failure to join additional claims waives the use of the defense in a subsequent action based on the additional claims.

Justice Kavanagh concurred in the result but would rest the decision solely on the court rule. The central concern of the court rule is simply whether the plaintiff has split a cause of action and whether the defendant has objected. The outcome of the first suit is irrelevant. There was no objection by the defendant here; therefore it has waived any res judicata de-

fenses it may have had and discussion of the res judicata doctrine is unnecessary.

Reversed and remanded for trial.

Justice Ryan, with Chief Justice Coleman and Justice Fitzgerald, voted to affirm on the ground that while the court rule affords the successful plaintiff some relief from the harsh effects of the merger doctrine, an unsuccessful party who has litigated a portion of a cause of action to a final adjudication should continue to have further claims arising out of the same cause of action barred by the judgment.

1. Under traditional notions of res judicata, a final valid judgment taken in a case terminates all litigation between the parties on the cause of action sued upon. Where a judgment is rendered in favor of the plaintiff the cause of action upon which the judgment is based is said to be *merged* in the judgment and the plaintiff cannot thereafter maintain another action on the original cause of action; if the judgment is rendered in favor of the defendant on the merits, the original cause of action is *barred* by the judgment. A party may not split a cause of action by dividing a single or indivisible cause of action into several claims or demands and bringing several actions on them. Rules of res judicata operate to require a party to bring forth all the grounds and theories available to support the cause of action or be barred from raising them in a subsequent suit.

2. The plaintiff in this case had improperly split a single cause of action and, in consequence, this suit is barred by application of the res judicata rule. The first cause of action against the defendant for cancellation of the mortgage lien arose out of a single transaction or occasion, the plaintiff's plan to finance repairs to her home. The plaintiff claimed entitlement to cancellation of the mortgage which she alleged had been fraudulently executed by the defendant's codefendant in that action. Defendant Colonial denied any knowledge of any wrongful or fraudulent conduct by its codefendant. In this action the plaintiff again seeks cancellation of the mortgage on a theory that defendant Colonial knew of its former codefendant's failure to make certain disclosures under the Federal truth-in-lending act. The plaintiff has thereby split her single or indivisible cause of action into two claims by advancing alternate grounds or theories for relief. The judgment by agreement of the parties dismissing the first action with prejudice operates as a final adjudication on the merits. Under traditional res judicata principles this subsequent action would be barred. The language of the "waiver provision" of the court

rule indicates that certain claims that might otherwise be concluded by a judgment will not be extinguished by a final adjudication in the absence of the opposing party's objection in the former suit. The narrow purpose of the waiver provision is to alleviate the harshness of the *merger* doctrine, not *bar.*

3. There can be no merger of a subsequent claim into a prior judgment unless the claimant prevailed in the prior case and obtained a judgment into which the cause of action can merge. Merger is the label traditionally assigned to describe the result which obtains when a claimant, usually but not always a plaintiff, splits a cause of action and prevails in the first suit. Bar is the label traditionally assigned to the situation in which a claimant who has split a cause of action and suffered an adverse judgment in the first suit is foreclosed from bringing a subsequent suit upon the same cause of action for the remainder of his claim. The plaintiff's truth-in-lending claim did not merge into the judgment entered in the first case, not because of the waiver provisions of the court rule but because, although she indeed split her cause of action, she did not prevail.

4. In the language of the traditional res judicata doctrine, the plaintiff's subsequent suit seeking recovery on alternate grounds is *barred* by the prior determination on the merits in defendant Colonial's favor. The drafters of the court rule chose to use the merger language of the traditional res judicata doctrine for a particular reason. The language of the rule does not refer to bar and one should be hesitant to conclude that the drafters sought to work a sweeping change of that doctrine without even alluding to it. On the contrary, the drafters sought to provide relief from harshness in a narrow category of cases and did not intend to create a situation in which claimants who suffer an adverse judgment on those claims first advanced can hold back alternate grounds and theories for later use and then proceed upon them if another theory has failed. If that were permitted in this case, and the plaintiff were allowed to proceed upon her instant claim and lose, she could sue Colonial still again, alleging knowledge of lack of delivery of the deed, or incompetency, or some other theory. In summary, an unsuccessful party may not bring a series of successive suits raising claims arising out of a single transaction or occurrence by each time alleging some variation in the facts and corresponding legal theory.

OPINION OF THE COURT

1. JUDGMENT — RES JUDICATA.

Res judicata has been framed in two distinct manners, as a literal

and narrow rule and as a broad one, but whatever the correct scope of the rule, its main purpose is to insure finality in a cause of action.

2. JUDGMENT — JOINDER OF CLAIMS — COURT RULES.

The court rule requiring the joinder of every claim arising out of the transaction or occurrence which is the subject matter of an action codifies the longstanding decisional rule against splitting a cause of action; to the extent the rule encompasses or mitigates res judicata, it must control (GCR 1963, 203.1).

3. JUDGMENT — JOINDER OF CLAIMS — WAIVER — COURT RULES.

The language of the court rule on required joinder of claims that failure to object to a failure to join constitutes a waiver of required joinder is clear, and its obvious effect is that waiver by the defendant precludes later assertion of the waived defense during a subsequent suit (GCR 1963, 203.1).

4. JUDGMENT — JOINDER OF CLAIMS — MERGER — BAR — WAIVER — COURT RULES.

The defenses of merger and bar have always been waivable by the defendant; the only innovative aspect of the waiver provision of the court rule on required joinder of claims is that a defendant must now assert an objection to failure to join during the first suit, when the plaintiff has an opportunity to cure the defect (GCR 1963, 203.1).

5. JUDGMENT — JOINDER OF CLAIMS — WAIVER — COURT RULES.

The language of the court rule on required joinder of claims that "failure * * * to object * * * constitutes a waiver of the required joinder rules" unequivocally waives all joinders, whether the plaintiff won or lost, so that the technical difference between merger and bar does not come into play at all (GCR 1963, 203.1).

6. JUDGMENT — JOINDER OF CLAIMS — WAIVER — COURT RULES.

The primary purpose of the waiver provision of the court rule on required joinder of claims is to encourage a defendant to assert, by motion, an objection to the plaintiff's nonjoinder of claims in the first suit when the defect can be cured; to apply the provision solely to merger and not to bar would defeat its purpose because there could be ·no certainty whether there would be merger until the plaintiff's success was determined, after rather than during the first suit (GCR 1963, 203.1).

CONCURRING OPINION BY KAVANAGH, J.

7. JUDGMENT — JOINDER OF CLAIMS — WAIVER — COURT RULES.

The *central concern of the court rule on required joinder of claims is whether the plaintiff has split a cause of action and whether the defendant has objected, and the outcome of the first suit is irrelevant; a defendant who has not objected to failure to join in the first suit has waived any res judicata defenses in a later suit, and discussion of the doctrine of res judicata is unnecessary (GCR 1963, 203.1).*

DISSENTING OPINION BY RYAN, J.

8. JUDGMENT — RES JUDICATA — CAUSE OF ACTION.

*Under traditional notions of res judicata, a final valid judgment taken in a case terminates all litigation between the parties on the cause of action sued upon; "cause of action" has been defined broadly as all claims against the defendant arising out of the same transaction or occurrence.*

9. JUDGMENT — MERGER — BAR.

*A judgment in favor of the plaintiff merges the cause of action sued upon in the judgment and the plaintiff cannot thereafter maintain another action on the original cause of action; a judgment in favor of the defendant on the merits bars the original cause of action.*

10. JUDGMENT — RES JUDICATA.

*Rules of res judicata operate to require a party to bring forth all of the grounds and theories available to support a cause of action or be barred from raising them in a subsequent suit.*

11. ACTION — MORTGAGES — CANCELLATION — SPLITTING CAUSE OF ACTION.

*A plaintiff seeking cancellation of a mortgage lien against her home had a single cause of action which arose out of a single transaction or occasion, her scheme to finance repairs to her home, and split her cause of action when she brought a first action for cancellation in which the mortgage lender was a defendant, in which she alleged no wrongdoing on the lender's part but claimed entitlement to cancellation because the mortgage had been fraudulently executed by a codefendant, and then a second action for cancellation on the theory that the lender had knowledge of the codefendant's failure to make certain disclosures under the Federal Truth-in-Lending act.*

12. DISMISSAL AND NONSUIT — JUDGMENT — BAR.

*A dismissal of an action with prejudice operates as an adjudication on the merits and will bar a subsequent action on the same matter.*

13. JUDGMENT — JOINDER OF CLAIMS — WAIVER — COURT RULES.

*The waiver provision of the court rule on required joinder of claims was intended to preclude in certain cases the merger into a prior judgment of claims not actually litigated although arising out of the same cause of action; it is merger which is precluded by the waiver provision, not bar; the drafters of the rule chose to use the merger language of the traditional res judicata doctrine for a particular reason, to provide relief from the harshness of the doctrine of merger (GCR 1963, 203.1).*

14. JUDGMENT — JOINDER OF CLAIMS — BAR — COURT RULES.

*A second lawsuit by a plaintiff seeking recovery against a defendant on alternate grounds after the first lawsuit was dismissed as to the defendant with prejudice is a splitting of the plaintiff's cause of action which is barred by the prior determination on the merits in the defendant's favor, and the waiver provision of the court rule requiring joinder of claims does not apply to it (GCR 1963, 203.1).*

*Thomas J. Guyer* for plaintiff.

*Fischer, Franklin & Ford* (by *George Hogg, Jr.,* and *Francis E. Bentley)* for defendant.

WILLIAMS, J. The sole issue on which this Court granted leave to appeal is whether a voluntary dismissal with prejudice of a prior suit which failed to state a cause of action under state law precludes, under the doctrine of res judicata and/or GCR 1963, 203.1, a plaintiff from bringing a second suit based on an alleged violation of the Federal Truth-in-Lending Act.

We find that plaintiff is not so precluded.

## I. FACTS

In 1972, plaintiff deeded her home to Louis Tibolla as security in connection with an agree-

ment by Tibolla to repair plaintiff's home after a fire. The conveyance itself was intended as a down payment of $5,500 on the total cost of repairs said to be $17,100. The balance of the amount due for the repairs was to be paid by plaintiff under a land contract to repurchase. The land contract had a clause authorizing Tibolla to mortgage the premises.

In September, 1972, Tibolla granted a mortgage to defendant Colonial Federal Savings and Loan Association of Grosse Pointe Woods (hereinafter Colonial), gave a personal note as well as a security interest in the property, and received from Colonial $15,000.

Later in 1972 plaintiff filed her initial lawsuit against Tibolla alleging that he had breached his contract of repair, committed fraud, used second-hand materials, made shoddy repairs and failed to apply half the proceeds of the land contract to pay off the mortgage. By amended complaint, plaintiff joined Colonial as a party and sought rescission of the mortgage between Tibolla and Colonial. Colonial denied that it was a party to any wrongful conduct and, at pretrial conference, January 8, 1975, plaintiff's attorney in the first case agreed to a dismissal of Colonial with prejudice. At the same time a default judgment was entered against Tibolla for the full amount of plaintiff's claim, $17,100, together with costs, interest and attorney's fees.

Nine days later plaintiff filed the instant suit against Colonial, seeking rescission of the mortgage based on a claim that violation of the Federal Truth-in-Lending Act, 15 USC 1635,[1] gave plaintiff

---

[1] The Federal statute affords a right to rescind security transactions involving real estate and places an affirmative duty to disclose on the creditor. The act reads in part:

"Except as otherwise provided in this section, in the case of any

a right to rescission. Colonial moved for and received an accelerated judgment on the basis of res judicata and election of remedies.

Appeal was taken by plaintiff to the Court of Appeals which affirmed by memorandum opinion of June 22, 1976. Plaintiff filed an application for leave to appeal to this Court and leave was granted March 7, 1977.

## II. RES JUDICATA

Res judicata is a manifestation of the recognition that endless litigation leads to vexation, confusion and chaos for the litigants, and inefficient use of judicial time. See generally 46 Am Jur 2d, Judgments, § 395, p 559. The scope of res judicata has been framed in this jurisdiction in two distinct manners, one of which is literal and narrow and the other of which is broad. The former literal statement of the rule appears in the case of *Clements v Constantine,* 344 Mich 446; 73 NW2d 889 (1955). In that case the scope of the doctrine was set forth as follows:

" 'The first essential of the rule of *res judicata* is the identity of the matter in issue. The "matter in issue" is defined to be "that matter upon which the plaintiff

consumer credit transaction in which a security interest * * * is * * * retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section."

proceeds by his action, and which the defendant contro-
verts by his pleadings." See Chand, Res Judicata, p 35.
If the same subject matter comes in question in a
second action in a court of last resort, it is bound by its
own former decision. Bigelow on Estoppel (1st ed), p 16.

"'"A matter or question, either of law or fact, is res
judicata, or set at rest, as to adverse parties and their
respective privies, if it was a material issue in the
proceeding, directly involved, and not merely inciden-
tally cognizable nor collaterally in question, and was
adjudicated after a contest, by a final judgment on the
merits." 1 Van Fleet, Res Judicata, p 2.'" Clements,
supra, 453-454. (Emphasis added.)

Literally res judicata means "[a] matter adjudged"
and is further defined by Black's Law Dictionary
(4th ed) as a "[r]ule that final judgment or decree
on merits * * * is conclusive of rights of parties or
their privies in all later suits on points and mat-
ters determined in former suit" (emphasis added).
What clearly stands out in these definitions is that
issues not litigated in a former suit are not res
judicata.

However, the rule has also been framed more
broadly. An example of this more inclusive state-
ment of the doctrine can be found in three cases
which deal with the res judicata of prior consent
judgments, Gursten v Kenney, 375 Mich 330; 134
NW2d 764 (1965); Shank v Castle, 357 Mich 290,
295; 98 NW2d 579 (1959); Prawdzik v Heidema
Brothers, Inc, 352 Mich 102; 89 NW2d 523 (1958).
In Gursten the rule was stated in dicta as follows,

"'"The plea of res judicata applies, except in special
cases, not only to points upon which the court was
actually required by the parties to form an opinion and
pronounce a judgment, but to every point which prop-
erly belonged to the subject of litigation, and which the
parties, exercising reasonable diligence, might have

brought forward at the time." ' " *Gursten,* p 335.[2] (Emphasis added.)

Whatever the correct scope of the rule, its main purpose is to insure finality in a cause of action. Plaintiff asserts that the cause of action she presently sues upon is different, separate and distinct from that in the prior suit, thereby precluding application of res judicata, and even if this were not the case, her second suit is saved by virtue of the waiver provision of GCR 203.1.

Because we find this case controlled by GCR 203.1, and because there was no objection as discussed in the last sentence of that rule, we need not decide whether plaintiff's second suit should have been part of her first suit under Michigan's rather broad definition of "cause of action",[3] or the broad definition of res judicata.

GCR 203.1 reads as follows:

"A complaint shall state as a claim every claim

[2] Factually, the matter attempted to be raised in the second trial in *Gursten* had been raised and pursued by the litigants in the first trial so the consent judgment would have been res judicata under either the narrow or broad statement of the rule, and the holding of the case was that plaintiff "elected to pursue the matter before the referee in bankruptcy [in the first case]. Having made that choice, he was under obligation to pursue it [by appeal] or abide by an adverse result", *Gursten,* p 335. Despite this, the Court attempted to deal with the inconsistency of the two above statements of the rule by distinguishing three older cases which had employed the narrower doctrine of res judicata *(Detroit Trust Co v Furbeck,* 324 Mich 401; 37 NW2d 151 [1949]; *Meister v Dillon,* 324 Mich 389; 37 NW2d 146 [1949]; *MacKenzie v Union Guardian Trust Co,* 262 Mich 563; 247 NW 914 [1933]).

The *Gursten* opinion distinguished the three older cases by finding that the matters raised in the second suits in those cases did not properly belong in the original suits or did not have to be raised at the time of the original suits and went on to find the broader rule preferred.

[3] See 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Authors' Comments, Rule 203, p 474, citing the Committee Comments to that Rule 203.1 and 1 Michigan Law & Practice, Action §§ 22-25, pp 132-140.

either legal or equitable which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the action and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. *Failure by motion* or at the pretrial conference *to object to improper* joinder of claims or to a *failure to join claims* required to be joined *constitutes a waiver* of the required joinder rules *and the judgment shall not merge more than the claims actually litigated."* (Emphasis added.)

The first sentence of the above court rule codifies Michigan's longstanding decisional rule against splitting a cause of action. That decisional rule is grounded on the same general policy considerations as the doctrine of res judicata and, to the extent the rule encompasses or mitigates res judicata, it must control.[4]

## III. GCR 203.1

In examining the instant case under GCR 203.1, the matter which must be decided by this Court is the impact, if any, of the waiver provision found in the second sentence of the rule. A Court of Ap-

---

[4] GCR 203.1 has no impact on the narrow rule of res judicata, *i.e.,* matters actually litigated. See 1 Honigman & Hawkins, Michigan Court Rules Annotated, Rule 203, Authors' Comments, p 476 in which it is stated "* * * sub-rule 203.1 modifies * * * res judicata, by providing that omitted claims relating to the original cause of action may be asserted later, if there was no objection to the failure to join them in the first action.

"*The rule has no effect, however, on the application of res judicata to the claims actually litigated in the original action."* (Emphasis added.)

Of additional interest is the fact that, as stated in the Committee Notes to the rule, it is meant to have no impact on the doctrine of collateral estoppel. 1 Honigman & Hawkins, Michigan Court Rules Annotated, Rule 203, Committee Notes, p 473.

peals opinion which previously considered the rule
is instructive.

In *Malesev v Garavaglia,* 12 Mich App 282; 162
NW2d 844 (1968), Justice Thomas Giles Kav-
anagh, then Presiding Judge of the Court of Ap-
peals, was faced with a case similar to the instant
one. Plaintiffs had initially brought a tort action to
recover property damage suffered during defend-
ants' construction of a drain water intake system
pursuant to a contract with the Wayne County
Board of Road Commissioners. Defendants were
awarded an accelerated judgment based on plain-
tiffs' failure to comply with the three-year statute
of limitations governing personal injury or prop-
erty damage claims. Less than two months later
the plaintiffs brought a second, separate action
against the same defendants claiming they were
third-party beneficiaries under the contract be-
tween the road commission and defendants and
that defendants had breached that contract. Un-
like their initial suit, plaintiffs' second suit sound-
ing in contract was subject to a six-year rather
than three-year statute of limitations.

Defendants were granted an accelerated judg-
ment in the second suit based on res judicata. On
appeal, then Presiding Judge Kavanagh correctly
found the application of res judicata to be erro-
neous, given the circumstance that plaintiffs had
not received an adjudication on the merits of any
portion of their claim.[5] Further, in light of GCR
203.1, he found that plaintiffs' second suit was not
barred despite the fact that they should properly
have joined a separate claim for breach of contract
in conjunction with the original suit. This was so
because "defendant made no objection at that time

---

[5] An accelerated judgment based on the three-year statute of limita-
tions is not an adjudication on the merits of a cause of action. See
*Nordman v Earle Equipment Co,* 352 Mich 342; 89 NW2d 594 (1958).

for failure to join all actions, consequently nothing bars the bringing of [plaintiffs'] separate action now. (GCR 1963, 203.1)". *Malesev, supra,* 285. See also *Roberts v Duddles,* 47 Mich App 601, 604; 209 NW2d 720 (1973).[6]

We find that the rule was interpreted and applied in the only logical manner by then Presiding Judge KAVANAGH in *Malesev.* As quoted above, the language of the rule specifically states that "failure * * * to object * * * to a failure to join claims required to be joined constitutes a waiver of the required joinder rules". This language is clear. Its obvious impact is that waiver by the defendant precludes later assertion of the waived defense during a subsequent suit.[7]

While at first glance the court rule's waiver provision may appear to create a vast change in

[6] In *Purification Systems, Inc v The Mastan Co, Inc,* 40 Mich App 308; 198 NW2d 807 (1972), another panel of the Court of Appeals discussed the waiver provision of GCR 203.1. The Court of Appeals affirmed a trial court's holding based on res judicata because it found that the facts to be proven in a second suit were the same as those litigated in the first. That court went on to discuss GCR 203.1 and noted that defendant had not made an objection under the rule. In apparent dicta, the panel adopted a balancing approach to application of the rule.

We disagree with the Court of Appeals findings in *Purification Systems* as to both res judicata and GCR 203.1, and that case is hereby overruled. See criticism of the case in 57 Mich St Bar J 842-843 (Oct, 1978).

[7] Colonial argues in this Court that,

"[t]he proper interpretation of GCR 1963, 203.1 is that claims omitted from the original suit may be asserted later if there was no objection to the failure to join them in the first action *and* if they do *not* arise out of the same transaction or occurrence involved in the first action" (emphasis in original).

The plain language of GCR 203.1 requires joinder of "every claim * * * *if it arises out of the transaction or occurrence* that is the subject-matter of the action" (emphasis added). In other words, it is a compulsory joinder provision for claims arising out of the same transaction. The second sentence containing the waiver provision requires objection to failure to join that which should be joined under the rule, *i.e.,* matters arising out of the *same* transaction or occurrence. Colonial's contention is contrary to the very language of the rule.

this area of law, we note that further reflection persuades us otherwise. The defenses of merger and bar have always been waivable by a defendant. The only innovative aspect of the rule's waiver provision is that a defendant must now assert his or her objection during the first suit when there exists an opportunity for plaintiff to cure the nonjoinder defect. In substance, the harshness of the prior rule is merely mitigated by the new requirement of timely motion. 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Committee Notes, Rule 203, p 472 and Authors' Comments, pp 474-475 to Rule 203.

## IV. "MERGER"/"BAR" AND GCR 203.1

Justice RYAN's opinion, in its interpretation of the instant case, would limit the scope of GCR 203.1 to cases falling within the technical limits of "merger",[8] on the ground that the rule makes specific reference to "merger" without similar specific reference to "bar".

Under such an interpretation, if a plaintiff had *won* a prior suit during which a defendant had failed to object to plaintiff's nonjoinder, GCR 203.1 would operate to allow the maintenance of a second suit because the defense of "merger" would have been waived. If a plaintiff had *lost* the prior suit, as occurred herein, however, under Justice RYAN's interpretation GCR 203.1 would be inapplicable despite a defendant's similar failure to object. This inconsistent result would obtain because

---

[8] Technically, merger occurs only when a prior judgment has been rendered in favor of a plaintiff; plaintiff's cause of action is merged if he or she wins. Bar, on the other hand, technically occurs when the plaintiff has been unsuccessful in the prior action; plaintiff's cause of action is barred if he or she lost. Under either doctrine, of course, plaintiff could not maintain a second suit based on the same cause of action.

a defendant could waive assertion of the defense of "merger" but could not waive assertion of the defense of "bar" under his reading of the rule, although in fact both actions were almost identical. We cannot agree that the rule can be interpreted in this manner for a number of reasons.

First, Justice Ryan's interpretation would mean that *Malesev,* which we believe correctly interpreted and applied GCR 203.1, was incorrectly decided. In *Malesev,* the plaintiff was unsuccessful in his first suit, but then Judge Kavanagh found that plaintiff could maintain a second suit because the waiver provision of GCR 203.1 precluded defendant's assertion of *bar.*

Second, we note that the concepts of merger and bar are almost identical despite their technical distinction.[9] In fact the terms "merger" and "bar" are often used interchangeably to convey the same meaning. In specific reference to the waiver provision of GCR 203.1, an example of this interchangeability in common usage can be found in Wayne Circuit Judge Horace W. Gilmore's oft-cited treatise, Michigan Civil Procedure Before Trial. The treatise states in § 8.103,

"failure * * * to object to * * * failure to join claims required to be joined, constitutes a waiver of the required joinder, and the judgment does not *merge* more than the claims actually litigated." (Emphasis added.)

In the very next section, § 8.104, the treatise states,

"[a]s pointed out in the previous section, § 8.103, failure to object to the nonjoinder of mandatory claims

---

[9] This is not to say that it is incorrect to usually interpret language employed in a statute or court rule under its technical meaning. Within the context of GCR 203.1, we find such a restrictive reading to be inappropriate.

means that the action does not *bar* a subsequent suit on that unjoined claim."[10] (Emphasis added.)

The fact that the terms are frequently not distinguished in common usage is further demonstrated by the fact that this limited interpretation of the waiver provision solely to those cases falling within the technical definition of merger has not arisen in prior Court of Appeals cases examining GCR 203.1.[11]

Third, even if merger is given its technical meaning, we do not find the language discussing merger to control that which precedes it. The second sentence of GCR 203.1 contains two clauses. The first states, "failure * * * to object * * * constitutes a waiver of the required joinder rules". This clause unequivocally waives all joinders, whether plaintiff won or lost. So the technical difference between "merger" and "bar" does not come into play at all. We hold this clause is absolute and controlling. The second clause states "* * * and the judgment shall not merge more than the claims actually litigated". We find the language in the second clause subordinate to the language contained in the first clause and hold that the term "merge" in the second clause is used in its more general sense. Waiver of the joinder rules necessarily includes waiver of the defense of "bar".

---

[10] This common interchangeable usage is further demonstrated by the fact that following the above quotation in the Gilmore Treatise, a hypothetical factual situation is inserted to illustrate the impact of the waiver provision as it would affect two separate suits. The hypothetical does not indicate whether plaintiff was successful or unsuccessful in the first suit, but does indicate that the second suit is authorized because of defendant's failure to object during the first suit.

[11] While litigants normally assert any plausible (and some not so plausible) arguments beneficial to their case, this limited interpretation has also not been raised by the parties herein.

This reasoning is substantiated by the Committee Notes discussing the "harshness" the waiver provision is meant to mitigate: "[t]he harshness of the present practice as it relates to the enforcement of compulsory joinder provisions * * * is the fact it almost always is enforced after the fact, through the doctrine of merger *and res judicata"* (emphasis added). Res judicata includes both the doctrines of merger *and bar.* James, Civil Procedure (Little, Brown & Company, 1965), p 549.

Further, and perhaps of greatest significance, to apply the GCR 203.1 waiver provision solely to merger and not to bar does not make sense in light of a primary purpose of the waiver provision. That purpose is to encourage a defendant to assert, by motion, an objection to plaintiff's nonjoinder in the first suit when the defect can be cured.[12]

---

[12] 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Committee Notes, Rule 203, p 472, states,

"Sub-rule 203.1 deals only with compulsory joinder of claims between those already parties to the action.

\* \* \*

*"The strictness of the compulsory joinder provision of sub-rule 203.1 and its all inclusive character is mitigated in a sensible way by its last sentence* and by the provisions of Rule 301 requiring the pre-trial conference judge to inquire as to whether or not all claims required to be joined are joined. *The harshness of the present practice as it relates to the enforcement of compulsory joinder provisions* (this is sometimes referred to as the rule against splitting causes of actions) *is the fact it almost always is enforced after the fact, through the doctrine of merger or res judicata. In other words, at the present time the question of whether or not all of a cause of action has been sued upon is seldom, if ever, challenged in the original suit when the defect might have been corrected. Normally, the challenge comes in a response to another suit alleging splitting or merger. At this late stage of the proceedings, no matter how innocent the parties were, there is no way to correct the matter and the party loses his chance to litigate the rest of his claim." (Emphasis added.)*

The Authors' Comments at p 475 states,

"An unfortunate aspect of the rule against splitting a cause of action was that it was almost always enforced after the fact. The question of whether all required matters had been joined was seldom raised in connection with the first action, when something could have been done about it. Rather, it was raised as a defense of res judicata

At this point it could not be known whether plaintiff would win or lose.

The introduction of fairness and certainty into this area of litigation is the obvious beneficial impact intended by the rule in requiring assertion in the first suit. For example, if a plaintiff initially fails to join all claims and there is *no objection* made by defendant to this defect, then all parties are on express notice that plaintiff may later institute suit on matters not actually litigated therein. Conversely, if plaintiff fails to join all claims and defendant *does object,* all parties know that plaintiff will be precluded from suing again absent an amendment in plaintiff's complaint joining those additional claims. Hence, as stated in the Committee Notes and Authors' Comments, the unfairness or harshness of the joinder rule is mitigated by bringing the matter to the fore in the original suit when the nonjoinder defect can be cured.

Clearly, if the waiver provision were solely applied to cases which, once litigated, come within the technical definition of "merger", there could be no certainty until plaintiff's success was determined; that very certainty sought to be realized by the rule *during* the original suit would be frustrated.[13] We cannot and do not find that this rule drafted to effectuate fairness and certainty during an original action, can be interpreted to render

to a second action attempting to present the related but previously unlitigated matters, and the penalty was that matters which should have been joined before were now forever lost."

[13] The defendant, aware that all claims had not been joined (whether the failure to join by plaintiff was intentional, or more likely a result of ignorance or mistake as probably occurred in the instant case) would be encouraged to engage in guesswork as to the likelihood of plaintiff's success on the limited points raised in the first suit, rather than being encouraged to make the objection as soon as he or she was aware of plaintiff's nonjoinder.

the matter uncertain until *after* finality of the original action.

Finally, the unreasonableness of interpreting the waiver provision as restricted only to cases falling within the technical definition of "merger" is further supported by the fact that we cannot logically find that the provision was intended to avoid harshness only with respect to the successful plaintiff. If a choice had been undertaken by the rule—and we do not find that one was—it would appear to us far more logical to assist the plaintiff suffering most significantly by the harshness of the traditional compulsory joinder requirement, *i.e.,* the plaintiff who has been unsuccessful and therefore recovered nothing from the defendant as a result of the original suit.

For the above reasons we cannot conclude that the GCR 203.1 waiver provision applies only to cases falling within the technical scope of merger and therefore only in favor of previously successful plaintiffs. We find the waiver provision to mean what it says—a defendant who fails to object to a plaintiff's nonjoinder waives the use of the defense in a subsequent suit based on additional claims.

## V. CONCLUSION

Consistent with the purpose and language of the rule, we find that defendant has waived the right to preclude the instant suit as a result of its failure to make timely objection in the original suit. Accordingly, we reverse and remand for trial on plaintiff's Federal Truth-in-Lending claim.

Costs to appellant.

LEVIN and BLAIR MOODY, JR., JJ., concurred with WILLIAMS, J.

KAVANAGH, J. *(concurring in reversal).* I concur in the result reached by Justice WILLIAMS but write separately in order to rest decision solely on the court rule. The central concern of GCR 1963, 203.1 is simply whether the plaintiff has split a cause of action and whether defendant has objected. The outcome of the first suit is irrelevant. But, because there was no objection by defendant here, it has waived any res judicata defenses it may have had, thus making discussion of the doctrine unnecessary.

RYAN, J. We granted plaintiff Blanche Rogers' application for leave to appeal to review the trial court's decision to grant accelerated judgment in favor of Colonial Federal Savings & Loan Association of Grosse Pointe Woods' (Colonial) motion for accelerated judgment on the basis of res judicata.

We are required to determine not only the applicability of the res judicata doctrine to the facts of this case, but the effect, if any, upon that doctrine of GCR 1963, 203.1.

I

On or about May 17, 1972, Ms. Rogers conveyed her home to one Louis Tibolla by warranty deed. In September of 1972, Tibolla mortgaged the home to Colonial as security for a loan of $15,000.

Later that year, Ms. Rogers filed suit against Tibolla and joined Colonial as a party. The final amended complaint in the suit alleged that Ms. Rogers had contracted with Tibolla to repair some fire damage to her home and that the repairs were to be financed under the contract by Ms. Rogers giving a warranty deed to Tibolla in exchange for a land contract under which she would repurchase

the premises. The land contract contained a clause stating that Tibolla could mortgage the property.

Ms. Rogers' complaint prayed that the deed, land contract and mortgage be set aside on the grounds that the repairs were not made in compliance with the agreement to repair, resulting in a failure of consideration. No wrongful conduct on the part of Colonial was alleged.

In its answer to the suit, Colonial denied being a party to the repair agreement or to any fraudulent conduct and, by way of affirmative defense, asserted that it was without "any knowledge of any wrongful or fraudulent conduct on the part of defendant" and that it had acted in good faith reliance upon Tibolla's record title and authority under the land contract to mortgage the property.

The suit was concluded on January 8, 1975, when Rogers obtained a default judgment against Tibolla and agreed to a dismissal "with prejudice" as to Colonial. Tibolla thereafter apparently left the jurisdiction, leaving the plaintiff's judgment unsatisfied.

Ms. Rogers filed the instant suit nine days later, alleging that the transaction with Tibolla was subject to the Federal Truth-in-Lending Act,[1] that Tibolla failed to make the disclosures required by that act, and that Rogers had a statutory right to rescind the agreement with him and recover the security. She alleged that Colonial knew that the act applied to the transaction and that the required disclosures were never made and prayed that Colonial's interest in the premises be declared void.

Colonial moved for accelerated judgment pursuant to the provisions of GCR 1963, 116, claiming, *inter alia,* that under the doctrine of res judicata,

---

[1] 15 USC 1601 *et seq.*

entry of judgment adverse to the plaintiff in the original action was a bar to the second suit.[2] The trial court agreed and granted the motion. The Court of Appeals affirmed in a memorandum opinion dated June 22, 1976.

We would affirm.

## II

Under traditional notions of res judicata, a final valid judgment taken in a case terminates all litigation between the parties on the cause of action sued upon. Where a judgment is rendered in favor of the plaintiff the cause of action upon which the judgment is based is said to be *merged* in the judgment and the plaintiff cannot thereafter maintain another action on the original cause of action. If the judgment is rendered in favor of the defendant on the merits, the original cause of action is *barred* by the judgment.[3] *Clements v Constantine,* 344 Mich 446; 73 NW2d 889 (1955); Restatement Judgments, §§ 47, 48, pp 181, 191. The term "cause of action" has been defined rather broadly in terms of all claims against the defendant arising out of the same transaction or occurrence.[4]

---

[2] GCR 1963, 116 provides in part:

".1 Grounds. In a party's first responsive pleading, or by motion filed not later than his first responsive pleading, a party may demand that service of process be quashed or that judgment be entered dismissing 1 or more claims asserted against him upon any of the following grounds:

\* \* \*

"(5) the claim is barred because of \* \* \* prior judgment \* \* \*."

[3] As will be explained more fully infra, the words *merger* and *bar* are terms of art when employed in the context of the plea of res judicata. There is a significant distinction between the effect of a subsequent claim being "merged" in a prior judgment and such a claim being "barred", particularly in light of GCR 1963, 203.1.

[4] 1 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), Authors' Comments, Rule 203, p 474.

Application of these rules seeks to protect parties from vexatious litigation and to promote judicial economy by encouraging the settlement of all rights between parties arising out of a single transaction in one suit. *Clements v Constantine, supra;* 1 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), Committee Notes, p 472. A party may not, then, "split a cause of action" by dividing a single or indivisible cause of action into several claims or demands and bringing several actions thereon. *Tuttle v Everhot Heater Co,* 264 Mich 60; 249 NW 467 (1933); *Dutton v Shaw,* 35 Mich 431 (1877).

The rule against splitting may therefore, through the doctrine of merger, operate to prevent a plaintiff, who has successfully litigated to completion part of a cause of action, from seeking complete recovery by maintaining successive actions on the unlitigated claims. See, *e.g., Arnold v Masonic Country Club,* 268 Mich 430; 256 NW 472 (1934).

Analogously, and more fundamentally, rules of res judicata operate to require a party to bring forth all of the grounds and theories available to support the cause of action or be barred from raising them in a subsequent suit. We have repeatedly applied our holding that:

" 'The plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.' " *Harrington v Huff & Mitchell Co,* 155 Mich 139, 142; 118 NW 924 (1908) quoting from *Henderson v Henderson,* 3 Hare 100, 115 (67 Eng Rep 313).

See, *e.g., Gursten v Kenney,* 375 Mich 330, 335;
134 NW2d 764 (1965); *Shank v Castle,* 357 Mich
290, 295; 98 NW2d 579 (1959); *Prawdzik v
Heidema Brothers, Inc,* 352 Mich 102; 89 NW2d
523 (1958). See also Restatement Judgments, § 63,
p 257.[5]

Where, however, a subsequent suit asserts a
different cause of action it will not be barred by a
prior judgment. *Clements v Constantine, supra;
Hewett Grocery Co v Biddle Purchasing Co,* 289
Mich 225; 286 NW 221 (1939); *Creek v Laski,* 248
Mich 425; 227 NW 817 (1929).

---

[5] Comment d to § 63 of the Restatement is particularly instructive
to the case at bar. It provides:

"Where an action is brought for the cancellation of a contract or
deed, and the plaintiff in his complaint alleges certain grounds for
cancellation, and at the trial he is unable to prove these grounds and
a verdict and judgment are given for the defendant, the plaintiff is
precluded from maintaining a subsequent action for cancellation of
the contract or deed, although in that action he alleges other grounds
for cancellation not alleged in the first action although then existing.

"*Illustrations:*

"6. A brings an action against B for the cancellation of a contract
made between A and B, alleging that the contract was procured by
the undue influence and fraud of B. After a verdict and judgment for
B, A brings a new action for the cancellation of the contract, alleging
mental incompetency of A. The prior judgment is a bar to the action.

"7. A brings an action against B for the cancellation of a deed by
which A conveyed land to B. In his complaint A alleges that he had
never executed or delivered the deed. After a verdict and judgment
for B, A brings a new action for the cancellation of the deed, alleging
that it was procured by the fraud of B. The prior judgment is a bar to
the action.

"8. An action is brought by the United States to have a certain
patent of land declared void on the ground that the patentee in
violation of a condition in the grant had failed to construct roads.
After a verdict and judgment for the defendant, the United States
brings a new action to have the patent declared void on the ground
that the land was within an Indian reservation. The prior judgment is
a bar to the action.

"9. A brings an action against B to cancel a deed, alleging that the
conveyance was procured by the fraud of B. After a verdict and
judgment for B, A brings an action for cancellation of the deed on the
ground that it was invalid for indefiniteness. The prior judgment is a
bar to the action."

Accord, Restatement Judgments, 2d (Tentative Draft No 5, 1978),
§ 61.1.

### III

Colonial claims that Ms. Rogers has attempted to split a single cause of action and bring separate suits upon it and that she is barred from doing so by reason of the aforementioned principles of res judicata.

Ms. Rogers replies that her instant truth-in-lending claim is a cause of action separate and distinct from the claim she first litigated, but that even if it is not, she is permitted to split her claim and bring this second suit by reason of the waiver provision of GCR 1963, 203.1.

We conclude that the plaintiff has indeed improperly split a single cause of action and that, in consequence, her instant suit is barred by application of the res judicata rule. We reach that conclusion despite the provisions of GCR 1963, 203.1, because we are persuaded that although Rule 203.1 has modified the traditional res judicata doctrine somewhat, it has not done so in ways determinative of the case before us.

Prior to instituting her original suit, Ms. Rogers had a single cause of action against Colonial for cancellation of the mortgage lien in question. That cause of action arose out of a single transaction or occasion; her scheme to finance repairs to her home.

In her first suit Ms. Rogers alleged no wrongful conduct on Colonial's part but merely claimed entitlement to a cancellation of the mortgage held by Colonial which she alleged had been "fraudulently" executed by the then codefendant Tibolla. In response, and by way of affirmative defense, Colonial denied "any knowledge of any wrongful or fraudulent conduct on the part of defendant Tibolla * * *". In this, the second suit, the plain-

tiff again seeks cancellation of the mortgage, but this time on the theory that Colonial had knowledge of Tibolla's failure to make certain disclosures under the Federal Truth-in-Lending Act. In so doing she has split her single or indivisible cause of action into two claims by advancing alternate grounds or theories of relief.

The first suit was brought to a conclusion by a dismissal *with prejudice* pursuant to an agreement of the parties. A dismissal with prejudice operates as an adjudication on the merits and will bar a subsequent action on the same matter. *Waddell v Waddell,* 335 Mich 498; 56 NW2d 257 (1953); *Edgar v Buck,* 65 Mich 356; 32 NW 644 (1887). A judgment dismissing a suit with prejudice, entered pursuant to an agreement of the parties, is given similar effect for purposes of res judicata. See *Shank v Castle, supra; Prawdzik v Heidema Bros, Inc, supra; Smoot v Fox,* 340 F2d 301 (CA 6, 1964); Anno: *Res judicata as affected by fact that former judgment was entered by agreement or consent,* 2 ALR2d 512. Consequently, since the judgment entered in the original litigation was a final adjudication on the merits, under traditional res judicata principles the instant action would be barred.

The plaintiff claims, however, that the innovative waiver provision of the second sentence of GCR 1963, 203.1 modifies the traditional res judicata doctrine in a way which permits her to maintain her second suit. The rule provides:

"Claims. A complaint shall state as a claim every claim either legal or equitable which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the action and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Failure by motion or at the pretrial conference to object to improper joinder of claims or to a failure to join claims required to be joined constitutes a waiver of the required joinder rules and the *judgment shall not merge more than the claims actually litigated."* (Emphasis supplied.)

According to plaintiff, Colonial's failure "by motion or at the pretrial conference to object * * * to a failure to join [the truth-in-lending claim] * * * constitutes a waiver of the required joinder" and, in effect, permitted her to split her cause of action. We disagree.

Prior to the adoption of Rule 203.1, the rule was unqualified that a party may not split a cause of action by dividing a single or indivisible cause of action into several claims or demands and bring several actions thereon. *Tuttle v Everhot Heater Co, supra; Dutton v Shaw, supra.*

The language of GCR 203.1 indicates a purpose that certain claims that might otherwise be concluded by a judgment will not become extinguished by a final adjudication in the absence of an opposing party's objection in the former suit. That is accomplished by the provisions of the second sentence of the rule, particularly the so-called waiver provision. The rule is a unique one and application of it is a question of first impression in this Court.

The drafting Committee Notes to Rule 203.1 indicate the extent to which the waiver provision of the second sentence of the rule was intended to apply. Its narrow purpose, according to its authors, is to alleviate the harshness of the "merger" doctrine. The Committee Notes recite in part:

"The harshness of the present practice as it relates to the enforcement of compulsory joinder provisions (this

is sometimes referred to as the rule against splitting causes of actions) is the fact that it almost always is enforced after the fact, through the doctrine of *merger*.

* * *

"In other words, the scope of the action that will be *merged* will be determined in the first litigation when it can be corrected rather than in the second litigation when it cannot be corrected." 1 Honigman and Hawkins, *supra*, Committee Notes, Rule 203, pp 472-473. (Emphasis added.)

A careful reading of the rule, together with the Committee Notes, indicates an intention by the drafters to preclude in certain cases the *merger* into a prior judgment of claims not actually litigated in the case although arising out of the same cause of action. It is *merger* which is precluded by the waiver provision of the rule, not *bar*.

But the merger doctrine is inapplicable to the case before us. There can be no merger of a subsequent claim into a prior judgment unless the claimant prevailed in the prior case and obtained a judgment into which the cause of action can merge. Merger is the label traditionally assigned to describe the result which obtains when a claimant, usually but not always a plaintiff, splits a cause of action and prevails in the first suit. Bar is the label traditionally assigned to the situation in which a claimant who has split a cause of action and suffered an adverse judgment in the first suit is foreclosed from bringing a subsequent suit upon the same cause of action for the remainder of his claim.

We agree that Ms. Roger's truth-in-lending claim did not merge into the judgment entered in the first case, not because of the waiver provisions of Rule 203.1 but because, although she indeed split her cause of action, she did not prevail.

Instead, in the language of the traditional res judicata doctrine, Ms. Rogers' subsequent suit seeking recovery on alternate grounds is *barred* by the prior determination on the merits in *Colonial's favor.*

We are convinced that the drafters of Rule 203.1 chose to use the merger language of the traditional res judicata doctrine for a particular reason. The language of the rule does not refer to bar and we are hesitant to conclude that the drafters sought to work a sweeping change of that doctrine without even alluding to it. On the contrary, we are convinced that the drafters sought to provide relief from harshness in a narrow category of cases and did not intend to create a situation in which claimants who suffer an adverse judgment on those claims first advanced can hold back alternate grounds and theories for later use and then proceed upon them if another theory has failed. If that was permitted in the case before us, and Ms. Rogers were allowed to proceed upon her instant claim and lose, she could sue Colonial still again, alleging knowledge of lack of delivery of the deed, or incompetency, or some other theory.

In summary, an unsuccessful party may not bring a series of successive suits raising claims arising out of a single transaction or occurrence by each time alleging some variation in the facts and corresponding legal theory.

While the waiver provisions of Rule 203.1 affords the successful claimant some relief from the harsh effects of the merger doctrine, an unsuccessful party, such as Ms. Rogers, who has litigated a portion of her cause of action to a final adjudication, will continue to have further claims arising out of the same cause of action *barred* by the judgment.

We would affirm, with no costs.

COLEMAN, C.J., and FITZGERALD, J., concurred with RYAN, J.

---

ORDER DISMISSING APPEAL
October 18, 1979

On order of the Court, a stipulation signed by the attorneys for the parties agreeing to dismissal of this appeal is considered. The stipulation for dismissal is treated as a stipulation to terminate proceedings on the rehearing granted by this Court's order of May 7, 1979 (406 Mich 1121) and it is hereby ordered that the order of May 7, 1979 in this cause is vacated and the motion for rehearing is dismissed with prejudice and without costs. To accommodate the desire of the parties that this matter be concluded by this order, it is further ordered that the Clerk shall refrain from issuing the judgment order entered pursuant to this Court's opinion of February 8, 1979.